RECORD & GUIDE CO. v. BROMLEY et al.

(Circuit Court, E. D. Pennsylvania. December 4, 1909. On Rehearing, January 25, 1910.)

No. 161.

1. COPYRIGHTS (§ 29*)—NOTICE—SUFFICIENCY.

The copyright act (Act June 18, 1874, c. 301, 18 Stat. 78 [U. S. Comp. St. 1901, p. 3411]) provides that no person shall maintain an action for the infringement of a copyright unless he shall give notice thereof by inserting in the several copies of every edition, on the title page, or the page immediately following, if it be a book, the following words: "Entered according to Act of Congress in the year —— by A. B. in the office of the Librarian of Congress at Washington," or at his option the word "copyright" together with the year the copyright was entered, and the name of the party by whom it was taken out, thus "Copyright —— by A. B." *Held*, that a copyright notice on the cover page of a periodical, above the title, "The entire contents of this paper covered by copyright," or "Contents covered by copyright," was insufficient.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 29; Dec. Dig. § 29.*]

2. COPYRIGHTS (§ 40*)—NOTICE—REPUBLICATION OF MATTER.

Plaintiff published weekly numbers of a real estate record relating to transfers of real estate in New York City called the "Record and Guide," which numbers complainant attempted to copyright under the name "Real Estate Record and Builders' Guide Company" under which the publisher, S., was doing business. Thereafter the same information published in the weekly numbers, combined and rearranged, but in other respects unchanged, was published in quarterly numbers during the year 1905, and the weeklies and quarterlies consolidated into an annual volume containing the same information under the same arrangement, and this copyrighted by the Real Estate Record Association, claimed to be another name under which S. was doing business. *Held*, that the copyright on the weekly numbers was forfeited, since it could be protected only by repeating the original notice whenever the copyrighted matter was afterwards published, under the copyright act (Act June 18, 1874, c. 301, § 1, 18 Stat. 78 [U. S. Comp. St. 1901, p. 3411]); providing that no person shall maintain an action for the infringement of a copyright, unless he shall give notice thereof by inserting the copyright notice in the several copies of every edition published.

[Ed. Note.—For other cases, see Copyrights, Dec. Dig. § 40.*]

3. COPYRIGHTS (§ 29*)—NOTICE.

A copyright notice at the bottom of each page of a publication, "The text of these pages are copyrighted. All rights reserved. Notice is hereby given that infringement will lead to prosecution," was not a compliance with the form prescribed by the copyright act (Act June 18, 1874, c. 301, § 1, 18 Stat. 78 [U. S. Comp. St. 1901, p. 3411]), and was therefore insufficient.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 29; Dec. Dig. § 29.*]

4. COPYRIGHTS (§ 29*)—NOTICE.

A notice of copyright, "Copyrighted 1907 by C. W. Sweet," was a sufficient compliance with the notice prescribed by the copyright act (Act June 18, 1874, c. 301, § 1, 18 Stat. 78 [U. S. Comp. St. 1901, p. 3411]).

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 29; Dec. Dig. § 29.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. COPYRIGHTS (§ 83*)—INFRINGEMENT—ACTION.

In a suit for infringement of a copyright covering a weekly periodical, the court could take into consideration quarterly and annual republication of the matter under a copyright notice by another, though published after the commencement of the suit, in order to sustain a determination that the original matter was not thereby protected, under the rule that the chancellor is governed by the situation at the date of the decree, rather than at the date of the filing of the bill.

[Ed. Note.—For other cases, see Copyrights, Dec. Dig. § 83.*]

6. COPYRIGHTS (§ 90*)—INFRINGEMENT—COSTS.

Where, in a suit for infringement of copyright, it appeared that complainants had lost their right to protection either by insufficient notices or by republication of the matter under notices of copyright by others, but the infringement was established, defendant would not be allowed costs, but each party would be required to pay one-half the costs.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 85; Dec. Dig. § 90.*]

On Rehearing.

7. COPYRIGHTS (§ 29*)—NOTICE—DATE.

A copyright notice was in two lines as follows:

| Copyright by The Real Estate Record and Builders' Guide Co. | | |
|---|---|---|
| Vol. LXXV. | May 6, 1905. | No. 1938. |

A continuous black line was drawn completely across the column between the first and second lines separating them as if they were in different columns. *Held*, that the date—May 6, 1905—could not be regarded as a part of the copyright notice, which was therefore void for want of a date.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 29; Dec. Dig. § 29.*]

8. COPYRIGHTS (§ 74*)—INFRINGEMENT—INJUNCTION.

Where complainant sued for infringement of an alleged copyright on a publication of information concerning transfers of New York City real estate, three instances of copying with reference to three different descriptions were insufficient to justify an injunction against defendants' work, but complainant would be left to its remedy at law.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 65; Dec. Dig. § 74.*]

In Equity. Bill by the Record & Guide Company against George W. Bromley and others. Bill dismissed.

Joseph Day Lee and Ernest Howard Hunter, for complainant.
Francis S. Cantrell, Jr., and Charles N. Butler, for defendants.

J. B. McPHERSON, District Judge. The present bill is filed to restrain the infringement of certain copyrights of which the plaintiff claims to be the owner. The facts that are now relevant are as follows:

For several years before June 1, 1907, C. W. Sweet was the proprietor and publisher of a periodical that appeared each week in the city of New York under the name of the "Real Estate Record and Builders' Guide." It is commonly known as the "Record and Guide," and will be so referred to hereafter. About June 1, 1907, the plaintiff acquired Sweet's interest in the periodical and in the copyrights described in the bill, and since that date the business has been carried on in the same manner as when Sweet was the owner. In April, 1908, he also assigned to the plaintiff such causes of action as he might

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

have against the defendants for infringing the copyrights in question, and this suit is brought to redress these violations, and also other violations averred to have been committed by the defendants between April, 1908, and September 9th of the same year, the day when the bill was filed.

The principal feature of the Record and Guide was, and is, the appearance each week of tabulated lists of all conveyances (including leases and mortgages) of real estate in the boroughs of Manhattan and the Bronx. The list of conveyances presents in condensed form a number of facts, namely, the nature of the conveyance, the names of the grantor and grantee, a brief description of the property, its street number and also its block and lot number, the consideration stated, the date of execution and of recording, and the amount of such mortgage as may be given. An example of the summaries that make up this list is the following item:

"71st St., W. No. 51 n. s. 535.6 from Central Park W. 16x102, 5 sty. stone front dwelling. Thos. J. McLaughlin to Mrs. L. Hall, Mort. $25,000; Feb. 9, Mar. 12, 1907, 4: 1124–11 A $16,000—$23,000, other consid. $100."

Obviously such information is important to many persons, for example to real estate dealers, builders, materialmen, and the large number of other people who for some reason are interested in keeping track of the transfers of real property; and, as the Record and Guide offers an easy and expeditious method of obtaining the information, it has a numerous and established clientele, and its business and good will are of considerable value. The plaintiff gets this information at much trouble and expense in the public record office of the city of New York, keeping two men continually (and sometimes more than two) employed in the offices of the register of deeds, and employing other persons to tabulate, arrange, and publish the data thus obtained from the original instruments that are filed for record. Once each quarter and also once each year the facts contained in the weekly numbers are combined and rearranged, and are then published in book form, thus giving to subscribers and purchasers a more convenient and more permanent record. In all these publications, whether weekly, quarterly, or yearly, the lists are arranged according to streets in alphabetical or numerical order, although the block and lot numbers are also given.

Nearly all these publications are said to have been copyrighted— although the suit is only concerned with some of these rights—and the defendants are charged with having infringed in the following manner: Largely by the unauthorized use of previously issued copies of the Record and Guide, they prepared and published several years ago a compilation which purports to give the name of each owner of real estate in the boroughs of Manhattan and the Bronx. This compilation was arranged, not according to streets, but according to the block and lot numbers of the various parcels of real estate; and, in order to be conveniently used, needed to be examined in connection with an atlas of New York that was also published by the defendants. This compilation bears the title "Owners' Names of the City of New York" (or the Bronx), and is usually spoken of as "Owners'

Names." The character of this publication will appear from the following example:

"Bl. 1647.
"1 Wm. Ebling, 1, 9, 92."

—this entry meaning that William Ebling became the owner of lot 1 in block 1,647 on January 9, 1892. Further information concerning the property could be obtained from the atlas, and, after the street and number had thus been discovered, additional facts could be learned from the Record and Guide. To supplement Owners' Names, the defendants have been publishing every two weeks lists arranged according to the same plan and containing similar information. These lists are called "Current Sheets." Every two years since the original Owners' Names was published, a new compilation has also appeared, bearing the same title and including all transfers made since the biennial issue immediately preceding. The plaintiff charges that, in order to obtain the information contained in Owners' Names and Current Sheets, the defendants did not go to the original sources, namely, the conveyances or the public records, but copied the information contained in the weekly numbers of the Record and Guide, merely rearranging it to suit the plan of their own publications. It is further charged—and this is not denied—that the defendants have sold a large number both of Owners' Names and Current Sheets, and that they intend to continue the publications of both periodicals.

This is a sufficient outline of the controversy to explain the questions that are now to be discussed. As the action is founded on the averment that the plaintiff's copyrights have been infringed, the first inquiry must be: What copyrights have been taken out? Upon this point the testimony is not in serious dispute. No copyright was applied for before February 18, 1905, but, beginning with that date (except for several weeks in November and December, 1905), an effort has been made to copyright every weekly issue up to and including the issue of August 22, 1908, and to copyright the annual issues for 1905 and 1906—to speak now only of the annual issues that are said to have been infringed. The bill does not charge the infringement of any copyright taken out upon a quarterly, neither does it charge that the copyright on the annual issue for 1907 has been infringed. (Of course, there could be no charge in the bill that the copyright on the annual issue for 1908 had been infringed, since that volume did not appear until 1909.) So far as the weeklies are concerned, the evidence satisfies me that (with the exception referred to, namely, part of November and December, 1905) the requirements of the copyright law were complied with, unless the method of giving notice was so defective that the protection of the statutes must be denied, or unless a copyright originally good became vitiated by failure to repeat the notice when the necessity of repetition arose.

As it seems to me, the plaintiff's case must fail, because the copyrights in question either never became effective by reason of failure to give the proper notice, or were lost by reason of failure to repeat the notice when the copyrighted matter was republished. The evidence requires the various issues of the Record and Guide to be considered in periods: (1) For the year 1905; (2) from January 5, 1906,

to March 23, 1907; (3) from March 23, 1907, to June 1, 1907; (4) from June 1, 1907, to August 22, 1908. Before considering the facts applicable, respectively, to each of these periods, the well-established rule should be recalled that the statutory requirements must be carefully observed before a valid copyright may be obtained, or (even if a copyright has been originally secured) before a right to sue for infringement accrues to the author or owner. For present purposes, it is only necessary to call attention, first, to the act of 1874 (Act June 18, 1874, c. 301, § 1, 18 Stat. 78 [U. S. Comp. St. 1901, p. 3411]), which provides:

"That no person shall maintain an action for the infringement of his copyright unless he shall give notice thereof by inserting in the several copies of every edition published, on the title page or the page immediately following, if it be a book,   *   *   *   the following words, viz., 'Entered according to Act of Congress in the year ——— by A. B. in the office of the Librarian of Congress at Washington' or at his option the word 'Copyright' together with the year the copyright was entered, and the name of the party by whom it was taken out; thus 'Copyright 18— by A. B.'"

And, second, to section 11 of the act of 1891 (Act March 3, 1891, c. 565, 26 Stat. 1109 [U. S. Comp. St. 1901, p. 3417]), which provides:

"That for the purposes of this act   *   *   *   each number of a periodical shall be considered an independent publication, subject to the form of copyrighting as above."

In Thompson v. Hubbard, 131 U. S. 148, 149, 9 Sup. Ct. 719, 33 L. Ed. 76, the notices in question were, "Entered according to Act of Congress," and at a later period, "Copyright, 1880," and it was held that neither was a compliance with the statute. The court said:

"It is very clear that Hubbard, as the proprietor of the copyright, was bound to give the statutory notice in the several copies of every edition published by him, and that he did not do so. The plain declaration of the statute is that no person shall maintain an action for the infringement of his copyright, unless he shall give notice thereof by inserting the prescribed words in the several copies of every edition published. That means every edition which he, as controlling the publication, publishes. His failure to give such notice debars him from maintaining an action for the infringement of his copyright. The word 'action' means an action either at law or in equity."

The opinion concludes by declaring that the right of action for infringement, as well as the copyright itself, "is wholly statutory, and the means of securing any right of action in Hubbard are only those prescribed by Congress." To the same effect is Higgins v. Keuffel, 140 U. S. 428, 11 Sup. Ct. 731, 35 L. Ed. 470. In Mifflin v. White Co., 190 U. S. 264, 23 Sup. Ct. 771, 47 L. Ed. 1040, the court cited Thompson v. Hubbard as authority for the statement that:

"It is incorrect to say that any form of notice is good which calls attention to the person of whom inquiry can be made and information obtained, since, the right being purely statutory, the public may justly demand that the person claiming a monopoly of publication shall pursue, in substance at least, the statutory method of securing it."

The court added:

"In determining whether a notice of copyright is misleading, we are not bound to look beyond the face of the notice, and inquire whether under the facts of the particular case it is reasonable to suppose an intelligent person could actually have been mislead."

This being the rule to be applied, the facts relating to the several periods may now be examined.

1. For the year 1905 the notice was given as follows: On the cover page of the periodical at the extreme top, above the title "Real Estate Record and Builders' Guide," was printed either "The entire contents of this paper covered by copyright," or "Contents covered by copyright." Following the cover page were several pages of advertisements, interspersed occasionally with reading matter, and then the body of the periodical began, including the tabulated lists in question. At the head of the first column on the first page of reading matter, the title of the periodical was repeated, with some information about the price and with other details, followed by two lines like this example:

Copyright by The Real Estate Record and Builders' Guide Co.

Vol. LXXV.              May 6, 1905.              No. 1938.

The notices upon the cover page are obviously insufficient, and the notice upon the interior page is the only one that need be considered. An inspection of any of the weekly numbers will show clearly that the date on the second line is the date of publication, and evidently was not intended to be a part of the notice of copyright. Whether the date may nevertheless be read into the preceding line need not, however, be determined, since in my opinion (assuming the notice to be sufficient) the plaintiff has no right of action for the infringement of the copyright upon any of the weekly issues for 1905; the reason being as follows: The copyrights upon the weekly issues were applied for in the name of the Real Estate Record and Builders' Guide Company. This was a trade-name under which C. W. Sweet was doing business, but for present purposes it may be conceded that the use of the trade-name did not invalidate the copyright. But, as the right was granted to the Real Estate Record and Builders' Guide Company, such right could only be protected by repeating the original notice whenever the copyrighted matter should be afterwards published. This point was decided in Mifflin v. Dutton, 190 U. S. 265, 23 Sup. Ct. 771, 47 L. Ed. 1043. In that case Mrs. Stowe copyrighted the last 13 chapters of the Minister's Wooing in her own name, but afterwards permitted these chapters to be printed in the Atlantic Monthly, and did not repeat the original notice in the successive numbers of the magazine. These numbers, however, were copyrighted in the name of Ticknor & Fields, but the Supreme Court held that, in spite of this effort by the publishers, the original copyright was vitiated by the subsequent publication. Mr. Justice Brown said:

"Mrs. Stowe's copyright of the last 13 chapters would doubtless have been valid but for the fact that they subsequently appeared in the November and December numbers of the Atlantic Monthly without notice of such copyright. As we have already held that the copyright of the Atlantic Monthly by Ticknor & Fields did not operate as notice of the rights of the author to any article therein appearing, it follows from the case just decided—(Mifflin v. White Co., supra)—that the appearance of the last 13 chapters in the Atlantic Monthly vitiated the copyright under section 5, which provides that no person shall be entitled to the benefit of the act unless he shall give information of his copyright by causing to be inserted in the several numbers of each and every edition published during the term secured a notice of such copyright."

In the case now under consideration, the same information that was contained in the weekly numbers of the Record and Guide—combined and rearranged, it is true, but in other respects unchanged—was published in quarterly numbers during the year 1905; but, as these numbers do not seem to have been offered in evidence, I am not advised whether any effort was made to copyright them, and, if so, in whose name. It does appear, however, that the weeklies and quarterlies were consolidated in an annual volume containing the same information under the same arrangement, and this was copyrighted by the Real Estate Record Association, and notice in that name was published in the annual volume. This is said to have been another tradename under which Sweet was doing business, but the fact seems to be immaterial. The point is that he could not take out the copyright under one name and successfully protect the republication of the same matter by giving notice in another name. Obviously the public would have no information that the two names referred to the same person; and, under the ruling in Mifflin v. Dutton, supra, the original copyrights were vitiated by the subsequent defective publication.

2. The facts with regard to the second period, from January 5, 1906, to March 23, 1907, leave no room for doubt as to the proper conclusion. During that period, the only notice of copyright is contained in the following sentences that were printed at the bottom of each page on which the items concerning the various parcels of real estate were published:

"The text of these pages are copyrighted. All rights reserved. Notice is hereby given that infringement will lead to prosecution."

I do not understand that any serious effort was made to sustain this notice, although there was some argument to the effect that the notice might be combined with what appears upon an earlier page in each of the issues. This is the title page of the issue, but I am unable to see how the words there found, namely, "C. W. Sweet," with the weekly date of publication, can be properly carried over and read into the sentences that have just been quoted. If the argument was seriously meant, I think nothing more need be said about it than to refer again to what was said by the Supreme Court in Thompson v. Hubbard concerning the necessity of complying with the requirements of the copyright law. Moreover, if more be needed, it also appears that the matter contained in the weeklies issued during the year 1906 was afterwards republished in the annual number for that year, and that this volume was copyrighted, not by C. W. Sweet, but by the Record and Guide Real Estate Information Bureau.

3. During the third period, namely, from March 23, 1907, to June 1, 1907, the title page of each weekly contains the notice, "Copyrighted 1907 by C. W. Sweet." This form complies with the statute and is sufficient, but the right of action for infringement must be denied because the same matter contained in these numbers afterwards appeared in the annual number for the year 1907, and this annual number was copyrighted, not by C. W. Sweet, but by the Realty Records Company, and due notice of such copyright appears upon the annual volume. Under the decision in Mifflin v. Dutton, the copyrights obtained dur-

ing this period (as well as the copyrights from January 1, 1907, to March 23, 1907, belonging to the second period) were thereby vitiated.

4. A similar statement may be made concerning the weekly issues from June 1, 1907, to August 22, 1908. The notice upon each of these issues is in proper form, namely, "Copyrighted 1907 (or 1908) by the Record and Guide Co." But, although this notice is sufficient, no right of action for infringement can be maintained because the publication of the annual volume for 1907, and its copyrighting, not by the Record and Guide Company, but in the name of the Realty Records Company, bring the situation within the ruling of Mifflin v. Dutton. Moreover, the quarterlies for 1907 were copyrighted either by the Realty Records Company or by the Record and Guide Real Estate Information Bureau.

So far as the weekly issues during the year 1908 are concerned, a like ruling must be made. All the quarterlies for 1908, and the annual number for that year, were copyrighted in the name of the Realty Records Company, and, although the annual volume and one or two of the quarterlies appeared after the institution of the present suit, I have no doubt that it is entirely proper for the court to take their appearance into consideration, and to base upon them the conclusion that the weekly issues from January to August 22, 1908, ceased thereby to be protected. It is well known that in equity the chancellor is governed by the situation at the date of the decree, rather than at the time when the bill was filed. "The rights of the parties as they stand when the decree is rendered are to govern, and not as they stood at any preceding time." Randel v. Brown, 2 How. 406. 11 L. Ed. 318.

If I am correct in the views thus expressed concerning the invalidity of the plaintiff's copyrights, it is, of course, unnecessary to discuss the question of infringement. But I have read the whole record, and I have no hesitation in saying that the evidence upon that subject is of such a character that I believe the suit to have been fully justified. While it is true that the reasons already given destroy the foundation of the plaintiff's action and therefore forbid the court to grant the relief for which he asks, I think the evidence that has been offered concerning the defendants' acts should be permitted to influence the disposition of the costs; and the decree dismissing the bill may therefore contain a direction that each party shall pay one-half of the total costs of the suit.

## On Rehearing.

The petition for a rehearing was put upon the following ground: The opinion had held that the bill could not be maintained because the copyrights were abandoned when the matter covered thereby was published afterwards in the quarterlies and annuals. Now, this ground of attack had been distinctly taken by the defendants, and the plaintiff presumably had made such answer at the final hearing as it then cared to make. But, as the court had adjudged this answer to be insufficient, the petition sought for a second opportunity to meet the attack, and asked leave to expand and elaborate an argument that had been previously thought worthy of only scant attention.

It is manifest, I think, that such a change of attitude can hardly

expect to be regarded with favor. The bill scarcely alluded to the subject that is now made so prominent; the following being the only paragraph that refers to it:

"Not only are said data put in a convenient shape for reference in the weekly issues of the Record and Guide, but once each quarter and also once each year the preceding weekly issues are compared, edited, checked up, revised, and published by your orator (and were so published by said Sweet during the period of his ownership) and sold to persons as a more permanent reference book than the weekly issues from their nature can be."

This is not only susceptible of the meaning that the quarterlies and annuals contain substantially the same matter as the weeklies, merely revised and rearranged; but I venture to affirm that this is the natural and ordinary meaning. The defendants' answer apparently so understood it, for the direct charge is made therein that the quarterlies and annuals, "containing the subject-matter of the preceding weekly issues of said Record and Guide, were without statutory notice of copyright, and with unlawful notice of copyright, wherefore said copyrights on said weekly issues became null and void and the subject-matter thereof public property." A later paragraph of the answer charged, further, that the quarterly issues "were not copyrighted nor marked with legal notice of copyright, wherefore the subject-matter thereof was and is public property."

With notice of this defense thus clearly set forth, the plaintiff took its proofs, and prepared its case for final hearing. But the printed brief contained no reference to the defense except a casual allusion in one or two sentences, although the defendants' brief treated the subject fully and in detail. Moreover, although the plaintiff was permitted to file an additional brief in reply, only two short paragraphs on separate pages alluded to the matter at all, and these certainly failed to show that the plaintiff relied upon them to meet the defendants' attack. Both briefs of the plaintiff are devoted to the discussion of other questions, and it is upon these questions that the whole stress of its argument is put. In my opinion, therefore, the court was justified in saying that:

"Once each quarter and also once each year the facts contained in the weekly numbers are combined and rearranged, and are then published in book form, thus giving to subscribers and purchasers a more convenient and more permanent record."

—and was justified also in drawing the inference that the plaintiff in effect conceded that the quarterlies and annuals substantially reproduced the weeklies, merely recasting them in a more convenient form. It is true that the weeklies contained much advertising and reading matter which did not afterwards appear in the quarterlies and the annuals, and it is also true that the quarterlies and annuals contained some matter (mainly prefatory) which is not found in the weeklies; but it can hardly be denied that the items with which we are now concerned (upon which alone the copyright is said to have been infringed) were carried over into the quarterlies and annuals without material change, except that they were mechanically re-combined and re-arranged.

If this view of the facts was correct, the plaintiff, as I understand its position, admits that the bill was properly dismissed; and the present petition therefore controverts the court's view with much elaboration, and seeks to have the decree set aside on the ground—which is now insisted upon for the first time—that the quarterlies and annuals are not substantial reproductions of the weeklies in the particulars that are now relevant, but are independent periodicals, standing upon their own footing, and entitled to be protected by independent copyrights. In strictness I think I would not have been bound to entertain this proposition. I am far from even intimating that the question was held in reserve to be used in case of an unfavorable decision upon the other points; on the contrary, I am fully satisfied that no such purpose existed, but the effect is precisely the same as if a plaintiff should try an experiment with his first argument, feeling confident that he can strengthen it on a second attempt in case it should prove too weak. In other words, the plaintiff's original attitude was that the quarterlies and the annuals were merely more convenient editions of the weeklies, and practically derived their whole value from the fact that they embodied the same information that was first published in the weeklies. But, considering that this position had been followed by unsatisfactory results, the plaintiff offered to change it radically, and to contend that the quarterlies and annuals are not in any sense editions of the weeklies, but are independent publications entitled to a copyright on their own account. But, as I did not wish to apply too strict a rule to the plaintiff's petition, I allowed it, although I believe that it might have been properly refused on the grounds just indicated. I have therefore reheard the case, and have considered again some of the questions that are presented by the record. For the purposes now in hand, I shall assume that the plaintiff's argument is sound, and that the quarterlies and annuals are so far independent publications that the effort to copyright them did not affect the copyrights on the weeklies. Even upon this assumption, however, I see no reason to change the decree, as I think will be made clear by a brief statement. Since the weeklies are now to be regarded by themselves, it is necessary to decide whether a valid copyright was obtained upon any of the numbers that were issued between February 18, 1905, and the beginning of the following November. The relevant facts have been already stated, and need not be repeated. I have re-examined the title pages of the numbers issued during that period, and I am confirmed in the belief "that the date on the second line is the date of publication, and evidently was not intended to be a part of the notice of copyright." Nothing can make this fact so plain as the inspection of one of these numbers. A continuous black line is drawn completely across the column between the first and second lines, separating the two as distinctly as if they were in different columns, and making it perfectly clear that the copyright notice was regarded as fully finished upon the first line, and that the second line was used for the different purpose of giving the date of publication, the volume number, and what seems to be the total number of the weekly issues.

The cases that have been cited in order to persuade the court to read the date from the second line into the first do not apply. In Callaghan

v. Myers, 128 U. S. 617, 9 Sup. Ct. 177, 32 L. Ed. 547, the title of a book was deposited in 1867, while the notice of copyright gave the year as 1866. This variance was held to be immaterial. The date in the notice was conclusive, and the only effect of the mistake was to shorten the duration of the copyright by one year. The title of another book was deposited by "E. B. Myers & Chandler," while the notice of copyright gave the name of "E. B. Myers" alone. This also was held to be an immaterial variance "under the circumstances of the case" (apparently because Myers was a partner in the firm) ; and the statute was said to be "substantially complied with, particularly as it is not shown that the defendants were misled by the variance, or induced to do or omit anything because of it." In Falk v. Schumacher (C. C.) 48 Fed. 222, the notice was "1889, Copyrighted by B. J. Falk, New York." As the court said, this was "less symmetrical and concise" than a notice which was in accord with the strict letter of the statute, but was nevertheless sufficient under the decision in Callaghan v. Myers as a substantial compliance with the statute. In Snow v. Mast (C. C.) 65 Fed. 995, the notice was "Copyright '94. By B. L. Snow"; and the obvious and well-known abbreviation for 1894 was held to point with sufficient certainty to the year. Bolles v. Outing Co. (C. C. A.) 77 Fed. 966, 23 C. C. A. 594, 46 L. R. A. 712, decided that a notice reading "Copyright 93 by Bolles, Brooklyn," was good; citing Lithographic Co. v. Sarony, 111 U. S. 53, 4 Sup. Ct. 279, 28 L. Ed. 349, as authority for the use of "Bolles" without a given name or initial, and holding, also, that no person could possibly be deceived by the omission of the figures denoting the century. And finally in Hills v. Austrich (C. C.) 120 Fed. 862, the notice "Copyright 1902, Published by Hills & Co. Ltd. London, England," was held to be "sufficient within the ruling of the Court of Appeals in Bolles v. Outing Company," supra—no more definite reason being given.

In each of these cases there is an attempt to include every element of the notice that is set out in the statute; and I think no decision can be found in which the total absence of one of these elements is held to be immaterial. No doubt a substantial compliance with the statute is enough, but it is the notice itself that must comply; and in my opinion it does not substantially comply, or indeed comply at all, if it omits the date altogether. If the court may travel outside the body of a notice and search for a missing date in the next line, I see no reason in principle why it may not be asked to search at other points on the page, no matter how remote; for, if there be a date anywhere else on the page, the argument that is now made would require the court to combine it with the remaining elements of the incomplete notice, and thus patch up a notice that would in the end be good—and to do this whenever the court may be satisfied that the applicant for the copyright intended that the date should be thus combined. In the cases cited the notice obviously intended to include all the necessary elements, for in some form all appear, and the intention to include them all is therefore manifest; but here the notice itself contains no date at all, and the only ground for supposing that the date in the next line may have been intended to supply the missing requisite is found in the nearness of the numerals. Would it have been an equally good

ground if the numerals had been two lines away? Or three? And how am I to know what was in the mind of the applicant in this respect? Even if the contents of his mind might be orally proved, no such evidence was offered; and I think, therefore, it must be manifest that, if I read the date from the second line into the first, I shall be acting upon nothing but my own belief of what the applicant intended, although he may in fact have had no such purpose. Suppose he did not know, or had forgotten, that the statute imperatively requires a date. This is by no means an impossible supposition; but, in that event, the notice as it now stands in the first line is precisely what he intended it to be, and to add anything to it would be to substitute my notice for his. Without prolonging the discussion, I repeat the conclusion that the first line is the whole of the copyright notice that was intended to be published; and, as it contains no date whatever, it is clearly insufficient.

From what has just been said, and from what is contained in the first opinion, it follows that no valid copyright was taken out upon any of the weekly issues before March 23, 1907. With five exceptions, therefore, all the instances in which the plaintiff claims that the defendants have infringed are to be found before that date. Of these five two were satisfactorily explained, and only three are urged upon the plaintiff's brief as furnishing sufficient evidence that copying has taken place. Two of these three are disputed, and there is evidence upon both sides of the question. The third is a clear example of copying without explanation or excuse. But even three such instances would not be enough to justify so drastic a remedy as an injunction in the present case. The injury that would be inflicted upon the defendants would be so disproportionate that the plaintiff may be properly left to its remedy at law. The order as to costs seems to me to be a sufficient punishment for the misconduct that has been proved since March, 1907. I make no finding how far, if at all, the defendants copied from the Record and Guide before that date. If I am right in my view about the validity of the copyrights on the weeklies, the defendants had a legal right to make use of the issues that had no lawful protection, whatever the ethics of the situation may have been.

The decree entered on December 4, 1909, will not be disturbed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes