## WEST PUB. CO. v. EDWARD THOMPSON CO.

(Circuit Court of Appeals, Second Circuit. March 7, 1910. On Petition for Rehearing, March 21, 1910.)

### No. 114.

1. COPYRIGHTS (§ 29*) —SUBSEQUENT EDITIONS OF BOOK—NOTICE OF COPYRIGHT.

There can be but one copyright for the same book for the first term of 28 years, and notice of only a single entry for copyright is necessary therein. If there is a subsequent edition of the book, the notice of copyright in it must be either of the date of the original or of the date of the subsequent entry, depending upon whether or not such changes or additions have been made as to constitute the later edition a new book.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 29, 30; Dec. Dig. § 29.*]

2. COPYRIGHTS (§ 5*)—SUBSEQUENT EDITIONS OF BOOK—ADDITION OF NEW MATTER—"NEW BOOK."

Under the copyright statutes as they stood prior to Act March 4, 1909, c. 320, 35 Stat. 1075 (U. S. Comp. St. Supp. 1909, p. 1289), as well as by the express provision of section 6 of such act, the addition of new matter to a copyrighted book in a second or subsequent edition makes it a "new book" subject to copyright as an original work.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 3; Dec. Dig. § 5.*]

3. COPYRIGHTS (§ 29*)—ORIGINALITY OF WORK—AGGREGATION OF PRIOR PUBLICATIONS.

The mere aggregation of weekly law reporters, which have been singly copyrighted, into volumes, does not constitute a new work requiring a new copyright.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 29, 30; Dec. Dig. § 29.*]

4. COPYRIGHTS (§ 29*)—ORIGINALITY OF WORK—COMPILATION OF COPYRIGHTED MATTER—LAW DIGEST.

The compilation and rearrangement and reclassification of syllabi in digests into new and larger digests constitute new works entitled to copyright, which need only notice of their own entry for copyright.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 29, 30; Dec. Dig. § 29.*]

5. COPYRIGHTS (§ 61*)—INFRINGEMENT—USE OF COPYRIGHTED MATTER.

The copying or paraphrasing of the syllabi from a copyrighted report of law cases by a subsequent publisher of a similar report or a digest, whether by so doing he saves literary work or merely mechanical labor, constitutes an infringement of the copyright.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 57; Dec. Dig. § 61.*]

6. COPYRIGHTS (§ 56*)—INFRINGEMENT—USE OF LAW DIGEST.

A writer of a law text-book may use a copyrighted digest of decisions, and may copy lists of cases therefrom, to assist him in running down the cases, and such use is a fair one and within the purpose for which the digest is sold; but extensive copying or paraphrasing of the language of the syllabi in the digest is an unfair use and constitutes an infringement of the copyright.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 52; Dec. Dig. § 56.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

176 F.—53

7. COPYRIGHTS (§§ 86, 87*)—SUIT IN EQUITY FOR INFRINGEMENT—LACHES—
POWER OF COURT TO AWARD DAMAGES.
Under Rev. St. § 4970 (U. S. Comp. St. 1901, p. 3416), which gives the
Circuit Courts power to grant injunctions to prevent the violation of
copyrights "according to the course and principles of courts of equity,"
the fact that a complainant, with knowledge that its copyrights were be-
ing infringed by defendant, delayed bringing suit until defendant after
16 years of labor and at large expense had practically completed the pub-
lication of its work, constituted such laches as warrants the denial of an
injunction or an accounting of profits; but in such a suit, ·although eq-
uitable relief is denied, the court has power to award the complainant
damages as compensation for the violation of its rights.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 79–81; Dec.
Dig. §§ 86, 87.*

Laches as a defense in suits for infringement of copyrights, see notes
to Taylor v. Sawyer Spindle Co., 22 C. C. A. 211; Richardson v. D. M.
Osborne & Co., 36 C. C. A. 613.]

Appeal from the Circuit Court of the United States for the Eastern
District of New York.

Suit in equity by the West Publishing Company against the Edward
Thompson Company. Decree for defendant (169 Fed. 833), and com-
plainant appeals. Decree modified.

William B. Hale, Henry E. Randall, and Edmund Wetmore, for ap-
pellant.

Walter Large and Frank P. Prichard, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. April 13, 1903, the complainant, a corpora-
tion and citizen of the state of Minnesota, filed the bill against the de-
fendant, a corporation and citizen of the state of New York, charging
it with infringement of copyright. The complainant is a publisher of
reports of cases and of legal digests. It began with the year 1879 the
publication of weekly reporters, which gradually grew into what is
known as the "National Reporter System," covering the decisions of
all the highest courts throughout the United States. It also published
all the decisions of the United States District and Circuit Courts from
1789 to 1880 in a series under one alphabet called the "Federal Cases."
It also became the owner of the United States Digests of decisions
known as the First and the New Series, and it published a digest of
the Federal Cases, a digest of the Federal Reporter, the American An-
nual Digest ·of all the decisions throughout the United States, and the
Century Digest, which includes the decisions of all courts throughout
the United States from 1858 down to 1896 under one alphabet.

Each weekly number of Reporters was copyrighted. Then several
such numbers were aggregated into a volume which was copyrighted.
The headnotes of the cases in the National Reporter System were
gathered into monthly or bimonthly digests, and these again into an-
nual or semiannual digests; these again into the American Annual
Digest; and these again down to 1896 with the syllabi of the United
States Digests, First and New Series, into the Century Digest under

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

one alphabet. Speaking generally, these books, consisting of some 600 volumes of reports and 99 volumes of digests, were copyrighted.

The defendant from the year 1887 was the publisher of encyclopedias composed of articles alphabetically arranged intended to cover the whole body of the law, known as the "American and English Encyclopedia of Law, First Edition," "Encyclopedia of Pleading and Practice," and "American and English Encyclopedia of Law, Second Edition," comprising in all 78 volumes. When this suit was begun, the American and English Encyclopedia of Law, First Edition, the Encyclopedia of Pleading and Practice, and 23 out of 30 volumes of the American and English Encyclopedia of Law, Second Edition, had been published.

A fuller statement of the facts of the case and reference to the authorities may be found in the careful and able opinion of Judge Chatfield, reported in 169 Fed. 833.

The defendant contends that the complainant has largely lost the benefits of its copyrights by the method in which it has published its books. This makes an examination of the copyright statutes necessary.

Rev. St. U. S. § 4956 (U. S. Comp. St. 1901, p. 3407), provides that no one shall be entitled to a copyright unless he shall on or before a certain day deliver to the Librarian of Congress a printed copy of the title of the book and two copies of the book.

Act June 18, 1874, c. 301, § 1, 18 Stat. 78 (U. S. Comp. St. 1901, p. 3411), provides that no person shall maintain an action for infringement of copyright unless he shall have given notice thereof by inserting in the several copies of every edition, as, for example, "Copyright 18— by A. B."

Section 4954 requires a new copyright to be taken out for a further term of 28 years.

Section 4959 requires one copy of every subsequent edition containing substantial changes to be delivered to the Librarian of Congress. The provision that books of foreign authors "heretofore" published of which new editions shall thereafter appear are entitled to copyright was enacted by Act March 3, 1891, c. 565, 26 Stat. 1110 (U. S. Comp. St. 1901, p. 3417), section 13 of which extended the benefit of our copyright laws upon certain conditions to foreigners. Prior to that act no foreign author or assignee of a foreign author could avail of our copyright law. Yuengling v. Schile (C. C.) 12 Fed. 97; Fraser v. Yack, 116 Fed. 285, 53 C. C. A. 563.

Taken together, we think these provisions show that there can be but one copyright for the same book for the first term of 28 years. It follows that if there may be a copyright for a subsequent edition the notice of copyright given in it must be either of the date of the original or of the date of the subsequent entry. It would certainly be fair to authors and to the public if improvements of and additions to a copyrighted book should be regarded as mere incidents of the original work covered by the original copyright, so that notice of it only need be given. In this way the public would be relieved of the burden and risk of ascertaining the time at which the copyright of the original work and the copyright of the additions, respectively, expired. No new

copyright of the same book because of alterations or additions apparently was contemplated by section 4959. It says nothing about recopyright, and, instead of a deposit of two copies of the altered work, as required for copyright, requires but one, evidently as a means of identifying it with the original copyrighted book. This view is corroborated by the exception it contains in favor of foreign authors whose books, not copyrightable if published before March 3, 1891, were allowed to be copyrighted if added to or improved after that date. Still, Mr. Justice Clifford at Circuit in the leading case of Lawrence v. Dana, 4 Cliff. 1, Fed. Cas. No. 8,136, while holding that there could be but one copyright, treated subsequent editions with notes or improvements as new books subject to copyright, and held that the notice to be printed in them should be of the date of entry of the improved edition without any reference to the date of original entry. In that case, which was for infringement of editions of Wheaton's Elements of International Law issued in 1836, 1846, 1855, and 1863, it was objected that the contents of the earlier editions had become public property because no notice was given in the later, of the entry for copyright of the earlier, editions. The learned justice said:

"Subsequent editions without alterations or additions should have the same entry, because they find their only protection in the original copyright; but second or subsequent editions, with notes or other improvements, are new books, within the meaning of the copyright acts, and the authors or proprietors of the same are required to 'deposit a printed copy of such book,' and 'give information of copyright being secured,' as if no prior edition of the work had ever been published; and the term of the copyright as to the notes or improvements is computed from the time of recording the title thereof, and not from the time of recording the title of the original work. Copyrights, like letters patent, afford no protection to what was not in existence at the time when they were granted. Improvements in an invention not made when the original letters patent are issued are not protected by the letters patent, nor are the improvements in a book not made or composed when the printed copy of the book was deposited and the title thereof recorded as required in section 4 of the copyright act. Protection is afforded by virtue of a copyright of a book, if duly granted, to all the matter which the book contained when the printed copy of the same was deposited in the office of the clerk of the District Court, as required by section 4 of the copyright act; but new matter made or composed afterwards requires a new copyright, and, if none is taken out, the matter becomes a public property, just as the original book would have become if a copyright for it had never been secured. Publishers may be in the habit of inserting more than one notice in new editions, but there is no act of Congress prescribing any such condition.

"Whenever a renewal is obtained under section 2 of the copyright act, the requirement is that the title of the work so secured shall be a second time recorded, and that the applicant must comply with all the other regulations in regard to original copyrights; but there is nothing in any act of Congress to show that each successive edition must specify the date of the original copyright, as contended by the respondents. Any tendency to mislead the public cannot be successfully predicated of a copyright in due form of law, where it appears that the party who secured it complied with all the conditions prescribed in the copyright act. This is all that need be remarked in reply to the suggestion of the respondents upon that subject."

This view, obviously more in favor of authors and publishers than of the public, probably caused the practice of the Librarian of Congress to recopyright copyrighted books which have been added to or improved in subsequent editions. Mr. Drone, in his work on Copy-

rights (page 270), dissents from Justice Clifford's reasoning, contending that to prevent abandonment the proper practice is to give notice in each new edition of every copyright previously taken out, and many publishers do so.

Section 6 of the act of 1909 (Act March 4, 1909, c. 320, 35 Stat. 1077 [U. S. Comp. St. Supp. 1909, p. 1291]), which is obviously declaratory, seems to confirm Justice Clifford's view that there is but one copyright of the same book, that additions and improvements make a new book, and that the only notice required is of the date of entry of the last edition. It is as follows:

"Sec. 6. (Compilations, etc., of works in public domain, etc.—subsisting copyrights not affected)—That compilations or abridgements, adaptations, arrangements, dramatizations, translations, or other versions of works in the public domain, or of copyrighted works when produced with the consent of the proprietor of the copyright in such works, or works republished with new matter, shall be regarded as new works subject to copyright under the provisions of this Act: but the publication of any such new works shall not affect the force or validity of any subsisting copyright upon the matter employed or any part thereof, or be construed to imply an exclusive right to such use of the original works, or to secure or extend copyright in such original works."

The mere aggregation of the Weekly Reporters into volumes does not in our opinion constitute a new work. But the compilation and rearrangement and reclassification of the syllabi in the digests into new and larger digests do constitute new works entitled to copyright which need only notice of their own entry for copyright. This view seems also to be corroborated by the same section, which provides that compilations, arrangements, and abridgements of matter in the public domain or of copyrighted matter with the proprietor's consent are to be regarded as new works subject to copyright.

Accordingly, we think that the complainant's works, with exceptions not necessary to be considered, are duly covered by copyright of which proper notice has been given.

In this respect we differ with the court below, which was of opinion that the complainant had abandoned a large part of its copyrighted volumes because of insufficient notice of copyright. It was held that the contents of all earlier digests carried forward into later and larger digests became public property because the later digests contained no notice of copyright of the earlier ones. In coming to this conclusion the learned judge relied largely upon the cases of Holmes v. Hurst, 174 U. S. 82, 19 Sup. Ct. 606, 43 L. Ed. 904, Mifflin v. White, 190 U. S. 260, 23 Sup. Ct. 769, 47 L. Ed. 1040, and Mifflin v. Dutton, 190 U. S. 265, 23 Sup. Ct. 771, 47 L. Ed. 1043. But these were all cases of the abandonment of the same work as the result of an earlier publication without copyright or with insufficient copyright. They do not apply to later digests regarded as new books entitled to copyright and needing only notice of their own entry in accordance with the views we have above expressed.

Rev. St. U. S. 4970 (U. S. Comp. St. 1901, p. 3416), gives the Circuit Courts power to grant injunctions to prevent the violation of copyrights "according to the course and principles of courts of equity on such terms as the court may deem reasonable." This brings us to a consideration of the question as to what is a fair use of the complain-

ant's copyrighted works. Obviously it would not be fair for any publisher of reports of the same cases or of digests of them to copy lists of cases or to copy or paraphrase syllabi from the complainant's publications whether by so doing he merely saved mechanical labor or literary work. This would be true of any publication similar to a former copyrighted publication. But a fair use of copyrighted material in a different publication may be broader. Suppose one were to issue a map of Kansas showing the annual amount and value of the chief products of each county. Could not a person writing a history of Kansas take those amounts and values bodily into his text? May not one reprint out of a copyrighted compilation of English love songs open to the public one or more for use in a work on English literature? We think there is a great difference between text-books and volumes of reported cases, or digests of those cases. The encyclopedias under consideration are really collections of text-books. The headnotes of reported cases are a digest of the law and facts of those cases, and digests of headnotes of various cases constitute collections and classified arrangements of decisions. On the other hand, a text-book states the principles of law and refers generally in footnotes to cases supporting or illustrating the propositions in the text. A poem or a novel or a history or a directory or a dictionary or a scientific treatise is intended to please, interest, instruct, or satisfy the reader, so to speak, in itself; but a digest considered by itself is nothing. Its purpose is as a tool to enable judges to write their opinions, lawyers to write their briefs, and authors to write their text-books. Such persons may cut out parts of the digests to assist them in running down the cases and copy lists of cases from the digests, as many of the defendant's writers have done. Such a use of the digests seems to us, differing in this respect from the court below, to fall directly within the purpose for which they are sold, and to be fair. On the other hand, extensive copying or paraphrasing of the language of the syllabi would not, we think, be a fair use.

The complainant knew at least as early as 1893 that its syllabi were being paraphrased or copied by the defendant's writers, or some of them. Its conduct shows that it must have considered this to have been a fair use of its publications because it did not begin this action until the defendant, after 16 years of labor and immense outlay of money, had published almost its entire work. The laches of the complainant and the hardship upon the defendant are such that we think the trial judge, "according to the course and principles of courts of equity," was right in refusing an injunction and accounting of profits. But we also think that the court can give damages in this case by way of compensation. Because Rev. St. U. S. § 4921 (U. S. Comp. St. p. 3395), entitles complainants in equity suits arising out of patents "to recover in addition to the profits to be accounted for by the defendant the damages the complaint has sustained" by the infringement, and there is no similar provision as to equity suits arising out of copyrights, it is sometimes said that damages cannot be awarded in the latter. We think this a misunderstanding of the statute. It applies to all patent causes without distinction and permits damages to be assessed when equitable relief is granted in addition to profits. This should not be construed to impair the power of courts of equity to do justice by al-

lowing the complainant compensation in damages where equitable relief, though it might be given, is for some satisfactory reason withheld. In such a case the damages are not given in addition to profits as provided by section 4921. It does not seem to us right to turn the complainant over to a court of law after over 5,000 pages of testimony have been taken in this cause, showing that its rights have been violated to some extent, especially considering that a jury trial would not furnish an adequate remedy in the sense of being adapted to determining the amount of the copying and paraphrasing. The bill asks for an injunction and for damages as well as for an accounting. This court, having obtained jurisdiction of the cause and having the power to grant an injunction, has the right to do justice between the parties and to dispose of it finally, even if this involves withholding injunctive relief and awarding damages. Masson's Appeal, 70 Pa. 26; Valentine v. Richardt, 126 N. Y. 272, 27 N. E. 255; Waite v. O'Neil, 76 Fed. 408, 22 C. C. A. 248, 34 L. R. A. 550; Andrus v. Berkshire Power Co., 147 Fed. 76, 77 C. C. A. 248; New York City v. Pine, 185 U. S. 93, 22 Sup. Ct. 592, 46 L. Ed. 820.

The decree of the Circuit Court, therefore, will be modified by the direction to refer the cause to a master for the purpose of determining what damages the complainant has sustained, or at the option of the complainant the decree may be affirmed, with costs of this court, without prejudice to its right to proceed at law.

LACOMBE, Circuit Judge. Although my individual opinion is in entire accord with the decision of this court in West Publishing Company v. Lawyers Co-operative Publishing Company, 79 Fed. 756, 25 C. C. A. 648, 35 L. R. A. 400, I accede to the proposition that the law for this circuit is settled in the later decision of the same court in Edward Thompson Company v. American Law Book Company, 122 Fed. 922, 59 C. C. A. 148, 62 L. R. A. 607.

Therefore I concur in the conclusion of the majority.

## On Petition for Rehearing.

PER CURIAM. The petition for rehearing is denied.

The order for the mandate shall provide that the decree of the Circuit Court be modified, without costs of this court to either party, so that said decree shall not dismiss the bill of complaint upon the merits, but shall deny the injunction and accounting of profits, and shall provide that the complainant recover its damages without costs of the Circuit Court accruing prior to the entry of the decree; the cause to be referred to a master to take proofs and report the same with his findings as to the amount of the damages.

Or in case the complainant shall, by writing filed with the clerk of this court within five days from the date hereof, so elect, the order shall provide for the affirmance of the decree of the Circuit Court, with the costs of this court to be paid by the complainant.