### DEWARD & RICH, Inc., v. BRISTOL SAVINGS & LOAN CORPORATION.

#### Civil No. 19.

District Court, W. D. Virginia, at Abingdon.

Aug. 17, 1940.

Gore & Gore, of Bristol, Va., for plaintiff.

Donald T. Stant and Bradley Roberts, both of Bristol, Va., for defendant.

BARKSDALE, District Judge.

This is a civil action instituted by Deward & Rich, Inc., of New York, against Bristol Savings & Loan Corporation, an industrial bank of Bristol, Virginia, the plaintiff alleging that the defendant had infringed its copyright, and praying that further infringement be restrained and enjoined, that all copyrighted materials in the possession of defendant be delivered up and destroyed, and for statutory damages, costs and attorney's fees. Defendant filed a motion to dismiss the complaint, which after a hearing was overruled by Hon. Armistead M. Dobie, who was then Judge of this Court, his opinion being reported in 29 F.Supp. 777. Thereafter, plaintiff amended its complaint, and the case was tried by the court without a jury. Since the trial, defendant seeks to amend its answer, and plaintiff accordingly seeks to amend its complaint, both of which motions will be denied, as the court is of the opinion that all pertinent issues are amply and sufficiently made up by the pleadings already filed.

I find the facts specially and state separately my conclusions of law thereon, and direct the entry of the appropriate judgment, as follows:

### Findings of Fact.

In the view I take of the case, the following are the pertinent facts:

Penarts Advertising, Inc., a New York corporation, obtained a certificate of registration from the United States Copyright Office, under the Copyright Act, Title 17 U.S.C.A. § 1 et seq., to a bound volume of cuts or illustrations, with appropriate accompanying wording, which it called its "Advertising Manual for Loan Advertising, Series of Newspaper Advertisements, Volume A", on October 22, 1931. As required by Section 5 of the Act, it was specified that the publication was a "book", belonging to the class set out in subsection (a) of Section 5. The individual cuts

or illustrations comprising the volume were not separately copyrighted as such.

By successive assignments, Bradley Advertising Company, Inc., became the owner of this copyright, and on December 19, 1938, this corporation was merged with the plaintiff corporation under the laws of the State of New York. Two of the assignments were duly recorded. One of them was not, but this failure to record has no bearing as between the parties to this suit.

The front cover of this Volume A bears its title, and at the bottom of the page has the following: "Copyright 1931 by Penarts Advertising, Inc. 88 Lexington Ave., New York, N. Y." On the inside of the cover is the following: "Copyright Notice. This work is copyrighted, as prescribed by the laws of the United States, and anyone duplicating or causing to be duplicated the whole or a part of the same without written permission from Penarts Advertising, Inc., will be prosecuted to the fullest extent. October 22, 1931. © ciA A 81129." There is no other title page following this cover sheet, and the book is made up of 52 bound prints made from mats, each print consisting of a drawing and wording appropriate to loan advertising. Plaintiff contends that on each mat, and consequently on each print or cut, there is the following: "Penarts Adv., Inc., New York, ©." However, such notices are extremely inconspicuous, it is impossible to make them out with the naked eye, and in no instance is one entirely legible to me with a microscope.

Plaintiff purposely made this notice inconspicuous so that it might seem that the advertisement was the original work of the advertiser and so as not to affect the drawing.

Defendant, on March 14, 1937, entered into a contract with plaintiff for the use of the 52 cuts as portrayed in Volume A, to be used by defendant in its advertising for one year beginning April 1, 1937. Pursuant to the contract, plaintiff shipped to the defendant 52 mats, 52 corresponding proof sheets, a name plate with defendant's name, and one layout book. The layout book shows on a number of sheets various ways in which the advertising cuts may be set up in a newspaper. The layout book has, on the bottom of its last page exclusive of the cover, "Entire contents copyrighted by Penarts Advertising,

Inc., 88 Lexington Avenue, New York." All this material was almost immediately turned over to the publishing company by defendant, and the notice on the last page of the layout book did not come to its attention until after this suit was brought.

When plaintiff's agent was soliciting defendant for a contract, he did not tell him that the service was copyrighted, nor in any way give him notice thereof; there is no mention of the copyright in the contract, and Volume A, which does bear the copyright notice, was never shown to defendant until after suit was brought. In the material received by plaintiff from defendant, there were notices on the mats and on the cuts in the layout book and on the loose-leaf proof, but none of these notices were legible or even noticeable.

During the year following April 1, 1937, defendant duly published all 52 cuts in the Bristol newspapers, to advertise its business as an industrial loan bank. In the published advertisements the alleged copyright notices are even more inconspicuous and less legible than in the prints in Volume A.

After the expiration of a year, on April 11, 1938, plaintiff wrote to defendant: "We find that your right to use the loan line campaign has expired.", and inquired if defendant wished to renew these rights. On April 22, 1938, defendant wrote the plaintiff acknowledging receipt of said letter, and inquired as to the cost of having something of the same kind for another year. On April 27th, plaintiff replied and offered defendant the use of the same material for another year for $26, and undertook to sell a new series, for the same price as charged for the former one, to-wit, $65. Defendant did not answer, the plaintiff wrote again on May 11th, asking for a reply. On May 25th, plaintiff again wrote to the defendant that it assumed that defendant was not interested in renewing the advertising contract, and requested that defendant destroy any of the copyrighted materials it might have on hand in order that there be no danger of their falling into the possession of anyone unauthorized to use same.

Between April 1, 1938, and November 28, 1938, fifteen cuts were republished in both the Bristol Herald Courier and the Bristol Evening News, they being a morning and an evening newspaper owned and published by the same company. These

publications were with the knowledge and approval of defendant, and paid for by it.

Late in November, 1938, plaintiff's salesman came to see defendant in Bristol, and first persistently undertook to sell another service. Finding that defendant would not subscribe again, plaintiff's agent informed defendant that he had learned that defendant was still running one of plaintiff's cuts or mats; that defendant had no right to do so because it was copyrighted. Defendant's agent told him that, although he did not concede that he had no such right, he would discontinue them, and did on that day discontinue the use of the mats. Defendant denies that it had any knowledge that the advertisements were copyrighted until that time.

Thereafter, plaintiff demanded damages of the defendant for infringement, and upon defendant's refusal to pay, this suit was instituted.

### Conclusions of Law.

My conclusions of law upon the facts found are:

■ (1) That the copyright notice on plaintiff's "Advertising Manual for Loan Advertising, Series of Newspaper Advertisements, Volume A" (hereinafter referred to as "Volume A"), constitutes a sufficient compliance with Sections 18 and 19 of the Copyright Act, Title 17 U.S.C.A. §§ 18, 19. The form of the notice on the front outside cover strictly complies with Section 18, and in my opinion the form of the notice on the inside of the front cover substantially complies. Section 19 requires that the notice shall be applied, in the case of a book, upon its title page or the page immediately following, and numerous decisions hold that this specified place of notice is mandatory. Bessett v. Germain, D.C., 18 F.Supp. 249; Richards v. New York Post, D.C., 23 F. Supp. 619; United Thrift Plan v. National Thrift Plan, D.C., 34 F.2d 300. In Volume A, the front cover is certainly used as a title page, and I see no reason why it should not be so used, nor do I find any decision holding that it cannot be so used. Therefore, since a sufficient copyright notice appears, both on the title page of Volume A and the page immediately following, and the other provisions of the Act have been complied with, I conclude that a valid copyright upon Volume A and its contents was acquired in 1931 by Pen-arts Advertising, Inc., which copyright had become the property of plaintiff at the time of the institution of this suit.

■ (2) That the alleged copyright notices on the mats and prints or cuts of the separate illustrations and advertisements embodied in Volume A, and on the published advertisements, being microscopic and illegible, constitute no notice at all. Alfred Decker Cohn Co. v. Etchison Hat Co., D.C., 225 F. 135; Smith v. Wilkinson, D.C., 19 F.Supp. 841. I am further of the opinion that even if the notice on such mats and the cuts or prints made therefrom were legible, they would not constitute a sufficient compliance with Section 18, for the reason that by the provisions of that section the notice required "shall consist either of the word 'Copyright' or the abbreviation 'Copr.', accompanied by the name of the copyright proprietor * * *", and in the case of a literary work, also the year the copyright was obtained. There is the further provision in Section 18 that in the case of copies of works specified in subsections (f) to (k) inclusive, of Section 5 of the Act, the notice may consist of the letter "C" enclosed within a circle, accompanied by the initials, monogram, mark or symbol of the copyright proprietor. Subsection (k) of Section 5 is "Prints and pictorial illustrations", and the individual advertisements embodied in Volume A might well fall within this category. But the advertisements were not individually copyrighted as such. The only copyright obtained by the plaintiff was the copyright of Volume A as a "book" under subsection (a) of Section 5, and in each of the assignments made by plaintiff's predecessors in title, Volume A is described as a "certain literary work". I therefore find that the copyright notice required by Section 18 for any part of Volume A was the word "Copyright" or the abbreviation "Copr." accompanied by the name of the copyright proprietor and the year in which the copyright was secured, and the plaintiff's attempted use of the letter "C" enclosed by a circle, accompanied by the abbreviated name of the copyright proprietor, was insufficient as a copyright notice, even if such notice had been legible. Although the facts are quite different, the conclusions reached in the case of Louis Dejonge & Co. v. Breuker & Kessler Co., 3 Cir., 191 F. 35, support this view.

(3) That the copyright notice on the last page of plaintiff's layout book was of no effect because it was not on the title page or the page immediately following. Bessett v. Germain, supra; Richards v. New York Post, supra; United Thrift Plan v. National Thrift Plan, supra.

(4) That between April 1, 1937, and April 1, 1938, all 52 of the advertisements embodied in Volume A were published by authority of the copyright proprietor, by defendant, in the newspapers of the City of Bristol, and that such publications, embracing the entire contents of Volume A, bore no copyright notices which complied with the Act, and therefore such publication was equivalent to publication with no copyright notice whatever; and that such publication was made by defendant without notice that these advertisements were copyrighted.

(5) That Section 9 of the Act not having been complied with, in that the contents of Volume A were published by the defendant without sufficient copyright notice, by authority of the copyright proprietor, the plaintiff, as to the contents of Volume A, has lost the right acquired by it under the Copyright Act, and that the advertisements so published became public property.

As heretofore mentioned, this case came before this court at an earlier date, upon defendant's motion to dismiss the action upon the pleadings, and this motion was, on October 31, 1939, overruled by Honorable A. M. Dobie, then judge of this court, 29 F.Supp. 777. Upon that motion, the allegations of the complaint having been assumed to be correct, the facts appeared to be that Volume A was furnished to defendant at or before the time of the contract between plaintiff and defendant, and that defendant, at and before the time of publishing the advertisements embodied in Volume A, had full notice of plaintiff's copyright, but that the mats and therefore the published advertisements bore no copyright notices. Plaintiff at that time had made no allegation of copyright notices upon the individual mats and cuts made therefrom. Upon this state of facts, Judge Dobie overruled the motion. But upon the trial of the case, the facts developed differently. Prior to the trial, plaintiff amended its complaint and alleged that due and proper notice appeared upon all mats and cuts made therefrom, in addition to the notice on Volume A. However, as I have already indicated in my Findings of Fact, the proof at the trial showed that defendant had never seen Volume A and had no actual notice whatever of copyright at the time of the making of the contract or at any time during the year between April 1, 1937, and April 1, 1938, when the 52 advertisements were published, and I have found as a fact that the alleged notices on the mats and cuts were insufficient and improper, and equivalent to no notice at all. Therefore, although upon the authority of Thompson v. Hubbard, 131 U.S. 123, pages 148 to 151 inclusive, 9 S.Ct. 710, 720, 33 L.Ed. 76, I am constrained to differ with the conclusion reached by my distinguished predecessor, yet even if I did not differ with his conclusion, the facts presented to me are quite different from those presented to him, in that as presented to me the element of the defendant's actual knowledge of the copyright at the time of the subsequent publication without proper copyright notice, which seemed so important to Judge Dobie, is now absent.

In Thompson v. Hubbard, supra, Thompson owned the copyright of a book and sold it to Hubbard. So long as Thompson owned the copyright, all publications of the book bore the proper copyright notices. After Hubbard acquired the copyright, he published several additions thereof bearing defective copyright notices. After such publication, Thompson proceeded to republish the book, without any license or permission from Hubbard, notwithstanding the fact that he had transferred all his right, title and interest in the book and copyright to Hubbard. Hubbard then sued Thompson for infringement, but the Supreme Court held that Hubbard's failure to give the required notice after he acquired the copyright, debarred him from maintaining his action, and said: "The view is urged that the only object of the notice required by the statute is to give notice of the copyright to the public; and that, as Thompson himself took the copyright, and had vested the title to it in Hubbard, he has no right to infringe the copyright, although it may be invalid as to the rest of the world. But we are of opinion that the failure of Hubbard to comply with the statute operated to prevent his right of action against Thompson from coming into existence. This right of action, as well as the copyright itself, is wholly statutory, and the means of securing any right of action in Hubbard are

only those prescribed by congress. Wheaton v. Peters, 8 Pet. 591, 662, 663 [8 L. Ed. 1055]; Banks v. Manchester, 128 U. S. 244, 252 [9 S.Ct. 36, 32 L.Ed. 425]."

In Holmes v. Hurst, 174 U.S. 82, 19 S. Ct. 606, 43 L.Ed. 904, it was held that the serial publication of a book in a monthly magazine, prior to any steps taken toward securing a copyright, is such a publication of the same within the meaning of the Copyright Act as to vitiate a copyright of the whole book, obtained subsequently, but prior to the publication of the book as an entirety, and so far as I am able to determine, this doctrine has been adhered to ever since.

Later, in Mifflin v. Dutton, 190 U.S. 265, 23 S.Ct. 771, 47 L.Ed. 1043, it was held that the authorized appearance of a part or parts of an author's work serially in successive numbers of a magazine, without the statutory notice of copyright specially applicable thereto, makes such work public property even though a copyright covering the entire work had previously been taken out by the author. This doctrine seems to me to be precisely applicable to the situation here presented, and seems to have been universally followed. Certainly it was applied in the following cases: Record & Guide Co. v. Bromley, C.C., 175 F. 156, 161; Bessett v. Germain, D.C., 18 F.Supp. 249, and West Publishing Co. v. Edward Thompson Co., C.C., 169 F. 833. In this last mentioned case, upon appeal, 176 F. 833, at page 837, the Circuit Court of Appeals for the Second Circuit differed with the court below as to the abandonment, but this difference was in regard to the facts and not as to the law. The Circuit Court recognized the principle that the publication of a work, without copyright notice, or with insufficient copyright notice, would result in the abandonment of a copyright earlier obtained, provided that the two publications were of the same work.

I further conclude that the provisions of Section 20 do not save plaintiff's copyright. The pertinent provision of Section 20 is as follows: "Where the copyright proprietor has sought to comply with the provisions of this title with respect to notice, the omission by accident or mistake of the prescribed notice from a particular copy or copies shall not invalidate the copyright or prevent recovery for infringement. * * *" The evidence here discloses that, although proper copyright notice appeared on Volume A, no sufficient copyright notice appeared on any of the mats made and disseminated by plaintiff for republication of the contents of Volume A. It would seem that the purpose of Section 20 was to protect the copyright owner where a notice has been omitted by mistake or accident from one or a few copies, and is no protection where proper notice has been omitted from all republished copies of the individual advertisements. Richards v. New York Post, supra; Bessett v. Germain, supra; United Thrift Plan v. National Thrift Plan, supra; Goes Lithographing Co. v. Apt Lithographic Co., D.C., 14 F.Supp. 620, 621.

However, it would seem that an even stronger reason why Section 20 should not apply here, is that the notices on the advertisements were made microscopic, and to all practical intents and purposes undiscoverable, not by accident, or mistake, but by deliberate intent, which was disclosed by the testimony of plaintiff's General Manager when he said, in effect, that the notices were made inconspicuous because his subscribers liked to have people think that the advertisements were original with them. The same situation was observed in the case of Goes Lithographing Co. v. Apt Lithographic Co., supra, when the court observed: "Moreover, there is no showing that the omission was 'by accident or mistake.' The defendants say that the omission was deliberate, due to customers' resistance against the appearance of the lithographer's name on prints."

Therefore, it follows that it is my conclusion that plaintiff abandoned its copyright by the publication, authorized by it, of the series of advertisements embodied in Volume A, without proper copyright notices, and that therefore it cannot maintain this action for infringement alleged to have taken place after such abandonment. An order will therefore be entered dismissing this action at plaintiff's costs.