## SMITH et al. v. WILKINSON.
### No. 298.

District Court, D. New Hampshire.
July 7, 1937.

James A. Broderick, of Manchester, N. H,. for complainant.

F. E. Normandin, of Laconia, N. H., for defendant.

MORRIS, District Judge.

This is a bill in equity brought by Doll & Smith of New York City against Lewis H. Wilkinson, of Laconia, N. H., doing business under the trade-name and style of the Wilkinson Funeral Home.

Complainants allege as a cause of action the violation of a copyright granted them November 13, 1924, on a booklet entitled "Publicity Guide for Funeral Direc-tors. Funeral Series B." The booklet contains several hundred pages of cuts suitable for use by undertakers in advertising their business.

At the time the copyright was granted Doll & Smith was a partnership comprised of J. Frank Smith, John H. Ryder, Harriett Doll, and Adolph Doll. Later the, Dolls withdrew and the partnership now remains J. Frank Smith and John H. Ryder, but the business continues to be conducted under the name of Doll & Smith.

It was the custom of the plaintiffs to sell the exclusive right to use the cuts and reading matter which they furnished for advertising purposes.

On May 3, 1933, the complainants entered into a contract with the defendant to furnish them the advertising material which is the subject of this suit. This contract was solicited by Anthony Doll & Co., advertising agents of Doll & Smith, and was for a term of three years. The price for the service was $130. This contract expired May 3, 1936, but the defendant continued to use the cuts in the Laconia Evening Citizen, a local newspaper in one issue weekly during the months of June, July, August, September, and a part of October 1936.

On October 9, 1936, the defendant received a letter from the Vanderbilt Advertising Company of New York, notifying him that he was using "some of our copyrighted Funeral Series B materials without our permission," and asking him what right he had to use the same. The letter further stated that the subject-matter was copyrighted. The following day the defendant wrote the Vanderbilt Advertising Company in part as follows: "I do not know what you are referring to but if you will send me a copy of the material to which you refer, I will be in a position to correct such a condition as it is not my intent or desire to use anything to which I do not have a clear title." On October 14, 1936, the Vanderbilt Advertising Company wrote the defendant and inclosed proofs of the copyrighted service which they claimed he was unauthorizedly using. The letter further stated that the defendant's use of the campaign had prevented them from placing the rights to use it with any one else, "and we cannot therefore waive our right to proceed against you for the violation of our copyrighted materials." The letter further states, "Without prejudice to these rights to proceed against

you for your unauthorized use of our copyrighted service we offer you a contract for $130.00. We believe this is the best possible way to adjust this matter. Will you please forward your check for $130.00 and we will immediately send you a contract and will allocate the territory for your use for three years in Laconia, N. H. We shall expect your response in our hands by Oct. 21st." In reply to the last-mentioned letter the defendant stated that under no circumstances would he renew the contract, and discontinued the publication of the material. On October 28th the Vanderbilt Company wrote the defendant that they were placing the matter in the hands of their attorneys.

This action for violation of the copyright was filed January 20, 1937. It is not an action for breach of contract.

The defendant testified that when he received the letter of October 9th from the Vanderbilt Advertising Company he failed to connect the letter with his contract with Doll & Smith, as he had done no business with the Vanderbilt Advertising Company. He further testified that when he entered into the contract solicited by Anthony Doll he was not informed that the subject-matter was copyrighted; that he did not receive a copy of the booklet, "Publicity Guide for Funeral Directors, Funeral Series B, Volume A, copyright 1924 by Doll & Smith." That all he received under his contract was fifty-two loose leaves taken from the booklet without any cover. Thirty-three of these pages were found by the defendant and introduced in evidence and marked as Exhibit 10. Corresponding cuts for the use of the printer accompanied the reading material.

The defendants' testimony was to the effect that it was the custom, when a shipment was made, to send a copy of the booklet (Plaintiff's Exhibit 2), but witness stated he could not say that it was done in this instance as he did not send out the material. Witness further stated that when a customer did not take the entire series, loose-leaf proof slips were sent along, and that the loose leaves were inclosed in a typewritten cover, which was a copy of the cover on the bound volume.

Defendant testified that the loose leaves sent him were not inclosed in a typewritten cover.

I find that the defendant's testimony is correct and that the loose leaves sent him were not inclosed in a cover as represented by Complainant's Exhibit 9 because there are no perforations in the leaves to indicate that a cover was attached. If such a cover had been attached, there is no question but that the defendant would have had ample notice that the material sent him was copyrighted material.

Defendant claimed that he never knew that the matter contained in the leaves was copyrighted until he received the communication from the Vanderbilt Advertising Company October 9th.

I find that this is a fact, and that defendant received no notice of a copyright in the manner above described.

The complainants, however, take the position that even if the defendant did not receive notice of the copyright in the manner described, that the cuts themselves contained such notice and that the notice required by statute may be found thereon. Attention is called to the letters D S with the letter c in a circle in the lower right-hand corner of the upper scroll. The complainants claim that this mark or symbol is a compliance with the statute as to notice (U.S.C.A. title 17, §§ 9 and 18).

An examination of the printed cuts discloses that it is impossible with the naked eye to identify the marks above mentioned or to distinguish them from the marginal scroll within which they are found. No one would discover the marks or symbols without the closest scrutiny and the use of a magnifying glass.

I find that such a microscopic print of the symbol does not comply with the statute.

The material sent to the defendant did not contain the name of the copyright proprietor as provided in section 18 of the act (17 U.S.C.A. § 18). In the case of Fleischer Studios v. Ralph A. Freundlich, Inc. (C.C.A.) 73 F.(2d) 276, 277, Judge Manton says: "The purpose of the statute's requirement as to notice is to prevent innocent persons who are unaware of the existence of the copyright from suffering for making use of the copyrighted article."

I hold that notice to the defendant was insufficient. See Thompson v. Hubbard, 131 U.S. 123, 148, 9 S.Ct. 710, 33 L.Ed. 76; Higgins v. Keuffel, 140 U.S. 428, 11 S.Ct. 731, 35 L.Ed. 470; Record & Guide Co. v. Bromley (C.C.) 175 F. 156; E. I. Horsman & Aetna Doll Co., Inc., v.

Kaufman et al. (C.C.A.) 286 F. 372; Goes Lithographing Co. v. Apt Lithographing Co., Inc., et al. (D.C.) 14 F.Supp. 620; Smith et al. v. Bartlett (D.C.) 18 F.Supp. 35. The plaintiffs in the last-mentioned suit were the same as the plaintiffs in the suit at bar.

It follows that a decree must be entered for the defendant. It is so ordered.