## DEWARD & RICH, Inc., v. BRISTOL SAVINGS & LOAN CORPORATION.

### No. 4745.

Circuit Court of Appeals, Fourth Circuit.

June 10, 1941.

Benjamin S. Gore and Charles M. Gore, both of Bristol, Tenn. (Louis Fieldman, of New York City, and Gore & Gore, of Bristol, Tenn., on the brief), for appellant and cross-appellee.

Donald T. Stant, of Bristol, Va. (Bradley Roberts, of Bristol, Va., on the brief), for appellee and cross-appellant.

Before PARKER, SOPER, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an action instituted in the District Court of the United States for the Western District of Virginia, at Abingdon, by the appellant, Deward & Rich, Incorporated, here referred to as the plaintiff, against the appellee, Bristol Savings & Loan Corporation, here referred to as the defendant. The object of the action was to enjoin the defendant from infringing a copyright owned by the plaintiff and to recover statutory damages for such alleged infringement of plaintiff's copyright.

Defendant filed a motion to dismiss the complaint and, after a hearing, Judge Armistead M. Dobie, then District Judge of the Western District of Virginia, now a judge of this court, denied the motion. Judge Dobie's opinion is reported in 29 F. Supp. 777. Afterward plaintiff amended its complaint and the case was tried without a jury before Judge A. D. Barksdale, who had succeeded Judge Dobie.

The trial judge made findings of fact and stated his conclusions of law in a written opinion and held for the defendant, dismissing the complaint by an order entered in August 1940. 34 F.Supp. 345. From this action the plaintiff appealed.

After the trial the defendant sought to amend its answer and the plaintiff sought to amend its complaint. Both motions were denied by the judge below on the ground that all pertinent issues were amply covered by the pleadings already filed. Defendant also moved for the allowance of attorney's fees which motion was denied. The defendant then brought a cross-appeal.

There is no dispute as to the facts which were found by the trial judge to be as follows:

"Penarts Advertising, Inc., a New York Corporation, obtained a certificate of registration from the United States Copyright Office, under the Copyright Act, Title 17, U.S.C.A., to a bound volume of cuts or illustrations, with appropriate accompanying wording, which it called its 'Advertising Manual for Loan Advertising, Series of Newspaper Advertisements, Volume A,' on October 22, 1931. As required by Section 5 of the Act, it was specified that the publication was a 'book,' belonging to the class set out in subsection (a) of Section 5. The individual cuts or illustrations comprising the volume were not separately copyrighted as such.

"By successive assignments, Bradley Advertising Company, Inc., became the owner of this copyright, and on December 19, 1938, this corporation was merged with the plaintiff corporation under the laws of the State of New York. Two of the assignments were duly recorded. One of them was not, but this failure to record has no bearing as between the parties to this suit.

"The front cover of this Volume A bears its title, and at the bottom of the page has the following:

" 'Copyright 1931 by Penarts Advertising, Inc., 88 Lexington Ave., New York, N. Y.'

"On the inside of the cover is the following:

" 'Copyright Notice. This work is copyrighted, as prescribed by the laws of the United States, and anyone duplicating or causing to be duplicated the whole or a part of the same without written permission from Penarts Advertising, Inc., will be prosecuted to the fullest extent. October 22, 1931. (c) ciA A 81129.'

"There is no other title page following this cover sheet, and the book is made up of 52 bound prints made from mats, each print consisting of a drawing and wording appropriate to loan advertising. Plaintiff contends that on each mat, and consequently on each print or cut, there is the following:

" 'Penarts Adv., Inc., New York, (c).'

"However, such notices are extremely inconspicuous, it is impossible to make them out with the naked eye, and in no instance is one entirely legible to me with a microscope.

"Plaintiff purposely made this notice inconspicuous so that it might seem that the advertisement was the original work of the advertiser and so as not to affect the drawing.

"Defendant, on March 14, 1937, entered into a contract with plaintiff for the use of the 52 cuts as portrayed in Volume A, to be

used by defendant in its advertising for one year beginning April 1, 1937. Pursuant to the contract, plaintiff shipped to the defendant 52 mats, 52 corresponding proof sheets, a name plate with defendant's name, and one layout book. The layout book shows on a number of sheets various ways in which the advertising cuts may be set up in a newspaper. The layout book has, on the bottom of its last page exclusive of the cover, 'Entire contents copyrighted by Penarts Advertising, Inc., 88 Lexington Avenue, New York.' All this material was almost immediately turned over to the publishing company by defendant, and the notice on the last page of the layout book did not come to its attention until after this suit was brought.

"When plaintiff's agent was soliciting defendant for a contract, he did not tell him that the service was copyrighted, nor in any way give him notice thereof; there is no mention of the copyright in the contract, and Volume A, which does bear the copyright notice, was never shown to defendant until after suit was brought. In the material received by defendant from plaintiff, there were notices on the mats and on the cuts in the layout book and on the loose-leaf proof, but none of these notices were legible or even noticeable.

"During the year following April 1, 1937, defendant duly published all 52 cuts in the Bristol newspapers, to advertise its business as an industrial loan bank. In the published advertisements the alleged copyright notices are even more inconspicuous and less legible than in the prints in Volume A.

"After the expiration of a year, on April 11, 1938, plaintiff wrote to the defendant: 'We find that your right to use the loan line campaign has expired,' and inquired if defendant wished to renew these rights. On April 22, 1938, defendant wrote the plaintiff acknowledging receipt of said letter, and inquired as to the cost of having something of the same kind for another year. On April 27th, plaintiff replied and offered defendant the use of the same material for another year for $26.00, and undertook to sell a new series, for the same price as charged for the former one, to-wit, $65.00. Defendant did not answer, the plaintiff wrote again on May 11th, asking for a reply. On May 25th, plaintiff again wrote to the defendant that it assumed that defendant was not interested in renewing the advertising contract, and requested that defendant destroy any of the copyrighted materials it

might have on hand in order that there be no danger of their falling into the possession of anyone unauthorized to use same.

"Between April 1, 1938, and November 28, 1938, fifteen cuts were republished in both the Bristol Herald Courier and the Bristol Evening News, they being a morning and an evening newspaper owned and published by the same company. These publications were with the knowledge and approval of defendant, and paid for by it.

"Late in November, 1938, plaintiff's salesman came to see defendant in Bristol, and first persistently undertook to sell another service. Finding that defendant would not subscribe again, plaintiff's agent informed defendant that he had learned that defendant was still running one of plaintiff's cuts or mats; that defendant had no right to do so because it was copyrighted. Defendant's agent told him that, although he did not concede that he had no such right, he would discontinue them, and did on that day discontinue the use of the mats. Defendant denies that it had any knowledge that the advertisements were copyrighted until that time."

The pertinent statutes are sections 3, 9, 18, 19 and 20 of the Copyright Act (Title 17 U.S.C.A. §§ 3, 9, 18-20). Section 9 reads as follows: "Publication of work with notice. Any person entitled thereto by this title may secure copyright for his work by publication thereof with the notice of copyright required by this title; and such notice shall be affixed to each copy thereof published or offered for sale in the United States by authority of the copyright proprietor, except in the case of books seeking ad interim protection under section 21 of this title."

Sections 18 and 19 set out the form of the notice required by Section 9.

The only question necessary to be considered on plaintiff's appeal is, whether by publishing or allowing to be published at different times under contract, without notice of copyright thereon, these various advertising cuts, or illustrations, component parts of Volume A, appellant thereby dedicated its copyright in said published parts to the public.

The trial judge held that the copyright notice on the last page of plaintiff's layout book was of no effect because it was not on the title page or the page immediately following. Bessett, Inc., v. Germain, D.C., 18 F.Supp. 249; Richards, Inc., v. New

York Post, D.C., 23 F.Supp. 619; United Thrift Plan v. National Thrift Plan, D.C., 34 F.2d 300. He also held that the requirements of the statutes had been sufficiently complied with as to the book or pamphlet known as Volume A, but that no notice was attached to the leaves of the book when separately published and that by permitting such publication without notice the owner of the copyright had dedicated its copyright in the leaves to the public and could not recover damages for the use of the advertising matter made by the defendant after the expiration of the contract.

 "Every reproduction of a copyrighted work must bear the statutory notice". Dejonge & Co. v. Breuker & Kessler Company, 235 U.S. 33, 35 S.Ct. 6, 59 L.Ed. 113, and authorities there cited. We know of no decision contrary to this holding, nor does the fact that the defendant first secured the copyrighted book "A" through a contract, paying the plaintiff for the use, change the rule. Thompson v. Hubbard, 131 U.S. 123, 9 S.Ct. 710, 33 L.Ed. 76.

Here the copyrighted book or pamphlet was published, leaf by leaf, until the entire book was published. Partial publication of a copyrighted work without the required notice has been repeatedly held to amount to a dedication, making the matter published the property of the public.

The serial publication of a book in a monthly magazine prior to any steps being taken toward securing a copyright is such a publication as vitiates a copyright of the whole book obtained subsequently. Holmes v. Hurst, 174 U.S. 82, 19 S.Ct. 606, 43 L.Ed. 904. In Mifflin v. Dutton, 190 U. S. 265, 23 S.Ct. 771, 47 L.Ed. 1043, it was held that the publication of a part or parts of an author's works serially without the statutory notice of copyright makes such work public property even though a copyright covering the entire work had previously been taken out. This decision is precisely applicable to the facts in the instant case and has been followed in a number of cases. Record & Guide Co. v. Bromley, C.C., 175 F. 156; Bessett, Inc., v. Germain, supra; West Publishing Co. v. Edward Thompson Co., C.C., 169 F. 833.

Smith v. Wilkinson, D.C., 19 F.Supp. 841, is a case very much on all fours with the instant case and the opinion there sustains the findings of the court below. See, also, Alfred Decker Cohn Co. v. Etchison Hat Co., D.C., 225 F. 135; Fleischer Studios v. Ralph A. Freundlich, Inc., 2 Cir., 73 F.2d 276.

Here the notice of copyright on the mats furnished the defendant were purposely made so as to be illegible, to lead the reading public to think the matter published was original. This was admitted on the trial of the case.

We are of the opinion that Section 3 of the Copyright Act, which protects component parts of a work copyrighted, does not protect the plaintiff here because no notice of the copyright was on the component parts as published.

We see no reason to disturb the finding of the judge below that no attorney's fee should be allotted to the defendant.

It is to be noted that the decision of Judge Dobie was upon a different state of facts from that upon which Judge Barksdale passed.

The order of the court below is affirmed.

Affirmed.