NATIONAL COMICS PUBLICATIONS, Inc.
v. FAWCETT PUBLICATIONS,
Inc. et al.

No. 197, Docket 21832.

United States Court of Appeals
Second Circuit.

Argued May 4, 1951.

Decided Aug. 30, 1951.

Phillips, Nizer, Benjamin & Krim, New York City (Louis Nizer, Walter S. Beck, Paul Martinson, and Seymour Shainswit, all of New York City, of counsel), for plaintiff-appellant.

Wallace H. Martin, and DeWitt, Van Aken & Nast, all of New York City, Macdonald DeWitt, Harry H. Van Aken, Marion L. Severn, Robert Bonynge, all of New York City (Nims, Verdi & Martin, New York City, of counsel), for defendant Fawcett Publications, Inc.

Meyer H. Lavenstein, New York City (Theodore R. Black, Charles E. Oberle, New York City, of counsel), for the Republic defendants-appellees.

Before CHASE, FRANK and L. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff appeals from a judgment, dismissing after trial its complaint against Fawcett Publications, Inc., and Republic Pictures Corporation—together with its affiliate, Republic Productions, Inc.—in an action based upon the infringement of its copyrights. The appeal of the Fawcett Company is from that part of the judgment which denied it any allowance for its at-torneys' fees. The "opinion and decision" of the district court is reported in 93 F. Supp. 349, and we shall not repeat the substance of the controversy which is there stated or the facts found, which we accept in so far as we do not indicate the contrary. In referring to the parties we shall use the same abbreviations as the judge: that is, we shall call the plaintiff and its predecessors collectively, "Detective"; the Fawcett Company, "Fawcett"; and the two Republic Companies, "Republic." We shall also call the McClure Newspaper Syndicate, "McClure." The judge dismissed the complaint because he held that "Detective" had "abandoned" its right to any copyrights in "Superman," and, having so decided, he found it unnecessary to decide whether "Republic" had infringed the copyrights, or whether, if it had, it could recover against "Fawcett" upon a contract between the two in which "Fawcett" agreed to hold "Republic" harmless for its use of the pictures in suit. On the other hand he found that, in publishing the exploits of "Captain Marvel" in "Whiz Comics" and its other magazines, "Fawcett" copied from "strips"—a "strip" consists of a series of pictures, carrying legends—which had appeared in "Action Comics," and had done so with the degree of detail which in Detective Comics v. Bruns Publications, 2 Cir., 111 F.2d 432, we found to infringe earlier copyrights of "Superman" by another plagiarist. The evidence does much more than show that this finding was not "clearly erroneous"; it leaves no possible doubt that the copying was deliberate; indeed it takes scarcely more than a glance at corresponding "strips" of "Superman" and "Captain Marvel" to assure the observer that the plagiarism was deliberate and unabashed. Whether "Fawcett" copied only from "Action Comics" in the end makes no difference, as will appear; but we shall assume *arguendo* that at times it also made use of "Detective's" other magazine, "Superman."

The judge based his decision upon the ground that "Detective" had "abandoned" the copyrights in suit, and it is necessary at the outset to distinguish between "abandonment," strictly speaking,

and what for convenience we shall call "forfeiture." We do not doubt that the "author or proprietor of any work made the subject of copyright" by the Copyright Law [1] may "abandon" his literary property in the "work" before he has published it, or his copyright in it after he has done so; but he must "abandon" it by some overt act which manifests his purpose to surrender his rights in the "work," and to allow the public to copy it. There was no evidence in this case of any such an intent on the part either of "Detective" or "McClure"; indeed, although "McClure's" negligent omissions may have invalidated many of the copyrights in suit, the very fact that it continuously attempted to publish "strips" with some sort of copyright notice affixed, however imperfect that may have been, is conclusive evidence that it wished to claim a copyright upon them; and indeed it would have had no conceivable purpose in allowing its rights to lapse. It is of course true that the publication of a copyrightable "work" puts that "work" into the public domain except so far as it may be protected by copyright. That has been unquestioned law since 1774; [2] and courts have often spoken of it as a "dedication" by its "author or proprietor." That, however, is a misnomer, for "dedication," like "abandonment," presupposes an intentional surrender, which is in no sense necessary to the "forfeiture" of a copyright. An author, whose work is "forfeited," need have had no such purpose, and ordinarily does not; it was indeed long doubtful whether he did "forfeit" his rights by publication, and when it was settled that he did, the result was a consequence, imposed *invitum* upon him because of his failure to comply with the prescribed formalities. In the case at bar this confusion has led to the erroneous conclusion that because "McClure" with "Detective's" supposed acquiescence may have been negligent in protecting the copyrights upon many of the "strips" in suit, "Detective" abandoned its right to copyright all pictorial portrayals of the exploits of "Superman." Since it did nothing of the kind, the case can be disposed of only by determining the validity of the copyright on each "strip" separately, and we shall state what we deem the essential factors in such a determination.

"Detective" "affixed" proper notices upon all issues of "Action Comics" and upon its other magazine, "Superman," as well, with the possible exception of Numbers 5 and 6—of which more hereafter. We agree with the judge that the publication in "Superman" under the copyright date, "1939," of "strips" which had already appeared in 1938 in "Action Comics," did not "forfeit" the copyrights upon those "strips," and our consideration may therefore be limited to the acts of "McClure" and any asserted acquiescence of "Detective." Apparently, "McClure" borrowed some "strips" from "Action Comics," and published them in its "syndicated" newspapers; but the great bulk of the "strips" in suit were those which "McClure" itself produced under the contract of September 22, 1938, and the original copyrights on which it took, or tried to take, in its own name. Before considering the effect of "McClure's" conduct upon either the copyrights of the borrowed "strips," or upon those produced under the contract, it will be clearer to consider the relations between "McClure" and "Detective" which the contract itself created. It begins by giving "McClure" an eight months option upon the "newspaper syndication of a daily strip * * * entitled 'Superman.'" "Detective" promises to continue to pay the salaries of the "artists," Siegel and Shuster, who were already in its employ; but it "agrees to permit them to supply 'Superman' strips exclusively to us for syndication * * * for a minimum period of five years after June 1, 1939," with an option for an added period of five years. "McClure" is to have "reasonable editorial supervision of the feature which the Artists agree to maintain at the standard shown in the sample submitted." "The material contained in the feature which we syndicate will be copyrighted in our

---

1. § 9, Title 17 U.S.Code.

2. Donaldson v. Becket, 4 Burrows 2408.

name, but copyright reverts to Detective at the termination of this contract." "McClure" agrees "to provide Detective with all the original drawings of the 'Superman' strip, so that said drawings may be used by Detective in the publication, 'Action Comics,' six months after newspaper release without charge or for any substituted magazine."

The judge, apparently without suggestion from either party, construed this agreement to be a "joint venture," and for that reason held that "McClure's" failure to affix the "required" notices to the "strips" had the same effect upon the copyrights in suit as though "McClure" were the "proprietor." We agree with the result, but because we think that "McClure" was indeed the "proprietor" of the copyrights, and for that reason we do not find it necessary to decide whether the contract constituted a "joint venture,"—incidentally one of the most obscure and unsatisfactory of legal concepts. Our reasons for this interpretation are two: (1) it is only on the assumption that "McClure" was the "proprietor" of the "work"—*i. e.* of the "strips" prepared by the "Artists" under the contract—that any valid copyrights could be secured by publication in the "syndicated" newspapers; and, (2), the text of the contract forbids any other conclusion. In support of the first point we need invoke no more than § 10. Section 9 declares that it is the "author or proprietor of any work" who is entitled to its copyright, § 10 declares that he may obtain it by "publication" with the "required" notice "affixed," and § 19 prescribes what the notice must be. Unless therefore "McClure" was a "proprietor" of the "strips" the purpose of the parties to copyright them was defeated; and we ought to construe the words to effect that purpose, so far as it is possible to do so. In support of the second point we say that the text itself comports only with the conclusion that "McClure" was to be the "proprietor." As has appeared above, the "material"—the "strips"—is to be copyrighted in "McClure's" name, but the copyright "reverts to Detective at the termination of this contract." That necessarily meant that, until the contract came

to an end, "McClure" was to have the "title" to the copyrights, for property cannot "revert" from one person to another unless the person from whom it "reverts" holds title to it. Even though he holds it in trust, its fate depends upon his acts, not upon his beneficiary's. The sentence which immediately follows reinforces this conclusion; it reads: "The title 'Superman' shall always remain the property of Detective." That disclosed a plainly deliberate distinction between the word, "Superman," used as a "title," and the "works" which were to be produced in the future and published by "McClure" in the "syndicated newspapers": the title was to remain "Detective's" "property"; the copyrights were only in the future to become its "property." In final confirmation of this interpretation is the clause in which "McClure" assumed "to provide Detective with all the original drawings * * * so that said drawings may be used by Detective in the publication 'Action Comics' six months after newspaper release." That is the language of a "proprietor," who assumes power to license another to copy the "works." Since for these reasons "McClure" became the "proprietor" of any copyrights upon "strips" published under the contract, in so far as it failed to affix the "required" notices upon the first publication of a "strip," and upon each copy published thereafter, § 10, the "work" fell into the public domain.

On the other hand, as we have already implied, the absence of any notice, or the affixing of an imperfect notice, upon one "strip" had no effect upon the copyright upon another "strip" depicting a different exploit. We do not mean that the "proprietor" of a number of copyrights may not evince such a consistent disregard of his right to copyright them as to justify the inference that he intends to "abandon" all future "works"; but, as we have said, the evidence in the case at bar precludes any such inference. Nor do we forget that every copyrighted "work" must be original, or that the "strips" in question had much resemblance in their subject matter: "Superman" is the same in all; he is only displayed in different magical feats. But

a copyrighted "work," unlike a patent, demands no "invention"; and the copyright of a later exploit of "Superman" was valid, in so far as the picture differed from those that had gone before. That follows from § 7 which provides for the copyright of "abridgments, adaptations, arrangements * * * or other versions"; for all of these are variants of some already published "work." The same result also follows from the fact that a copyright never extends to the "idea" of the "work," but only to its "expression," and that no one infringes, unless he descends so far into what is concrete as to invade that "expression." We can add nothing to what we said in Nichols v. Universal Pictures Corp., 2 Cir., 45 F.2d 119, and Sheldon v. Metro-Goldwyn Pictures Corp., 2 Cir., 81 F.2d 49, except that it was precisely on this account that in our earlier "Superman" case itself—Detective Comics, Inc., v. Bruns Productions, supra, 2 Cir., 111 F.2d 432—we limited the copyright to the specific exploits of "Superman," as each picture portrayed them. The judge answered by saying that "the syndicated newspaper stories were not identical with the 'Action Comics' stories but they were so nearly similar that, if they had been published by a stranger, they would clearly be held to be infringements of the copyrights on the 'Action Comics' stories." To that test we cannot agree. There may indeed be limits to the protection that will be given to the variant of an earlier "work," even when the variations in it are plagiarized to the last particular. Added phrases in a written "work," or changes of a few lines or colors in a pictorial one, may be too trivial to be noticeable by an ordinarily attentive reader or observer; and we will assume *arguendo* that in such cases the variant cannot be copyrighted. But there were much greater variations than these between the different "strips," and each "strip" was an original "work," capable of independent copyright.

We come therefore to the attacks which "Fawcett" makes upon the copyrights of the separate "strips" in "Action Comics," and in "Superman," so far as it may have copied any of the "strips" from that magazine. "Fawcett" asserts that the copyright had been lost upon many of these which appeared in "McClure's" "syndicated" newspapers, and it is of course true that, if so, they were not revived when published in "Action Comics." As we have already suggested, there may be a difference between "strips" which "McClure" borrowed from "Action Comics," and those which it produced and published under the contract; and we shall consider the borrowed "strips" first. Although the judge did not find the terms of the agreement under which they were borrowed, we must suppose that there was one; and at best "McClure" could have become no more than a licensee, for it is not suggested that "Detective" transferred the copyrights in them. The question is whether the absence or the imperfection of the notices on these "strips" "forfeited" their copyrights, when they were published in the "syndicated" newspapers. The answer depends upon the terms of the contract of borrowing. Section 10 provides that the first publication of a "work" with the "required" notice secures the copyright; but it implies that a failure to affix the notice upon each copy, later published "by authority of the copyright proprietor," will "forfeit" it; and such is the law.[3] If "Detective" gave "McClure" an unconditional license to publish the "strips," their publication without the "required" notice was "by authority of the copyright proprietor," and had the same effect upon the copyrights that similar publication by "Detective" would have had: it "forfeited" them unless § 21 saved them. On the other hand if "McClure" promised to affix the "required" notice upon the borrowed "strips"—as it did upon the "strips" made under the contract—the performance of that contract was a condition upon the license, for "Detective" certainly did not mean to be remitted only to the inadequate remedy of an action for damages for breach of the promise. The decision

3. Mifflin v. Dutton, 190 U.S. 265, 23 S.Ct. 771, 47 L.Ed. 1043; Louis DeJonge & Co. v. Breuker & Kessler Co., 235 U.S. 33, 35 S.Ct. 6, 59 L.Ed. 113; Deward & Rich, Inc., v. Bristol Savings & Loan Corp., 4 Cir., 120 F.2d 537.

of the Seventh Circuit in American Press Association v. Daily Story Publishing Co., 120 F. 766, supports this interpretation of such a contract, and we regard it as unanswerable. "Detective" may indeed have waived the performance of such a promise, if one was made, but the judge made no finding on the matter, and we leave the issue open, except to say that the exchange of letters between "Detective" and "McClure" in August, 1940, would not support a finding of waiver.

Next, and much more important, are any omissions by "McClure" or the "syndicated" newspapers to affix the "required" notices upon those "strips" which were produced and published under the contract of September, 1938. Since "McClure" was the "proprietor" of these "strips," if it omitted to affix the notice upon the copy, or "mat," which it sent to a newspaper to be published, the copyright upon it was lost upon publication, unless § 21 saved it. On the other hand, if upon the "mat" sent to a newspaper "McClure" had affixed the "required" notice, the situation was the same as in the case of a borrowed "strip": i. e. if "McClure" exacted a promise from the newspaper to affix the notice upon all copies which the newspaper published, performance of that promise became a condition upon that newspaper's license to publish; and publication without the "required" notice was not "by authority of the copyright proprietor" and did not "forfeit" the copyright. But, if "McClure" did not exact any such promise from the newspaper to which it sent a "mat," it gave "authority" to the newspaper to publish as it chose, and the copyright was "forfeited," if the newspaper failed to annex the "required" notice. In short, as to "strips" published under the contract of September, 1938, "McClure" stood in the same relation to the newspapers that "Detective" stood to "McClure" as to any borrowed "strips."

It remains to consider the effect of § 21 upon those situations in which except for it the copyrights would be "forfeited." That section provides that when the "proprietor has sought to comply * * with respect to notice, the omission by accident or mistake of the prescribed notice from a particular copy or copies shall not invalidate the copyright" as against an infringer who has "actual notice"; and "Fawcett" was such an infringer. In order to invoke the section, the "proprietor" must have sought to "comply" with §§ 10 and 19, and if he omits to affix any notice whatever, he has not done so. It makes no difference that that omission may itself have been the result of "accident or mistake"; the section does not come into play at all unless he has taken some step towards compliance; it excuses only faulty notices, not a publication bare of any.[4] It follows that, so far as "McClure" sent out "mats" without any notice at all, the copyrights on those "strips" were lost, regardless of § 21.

Next, as to any later omission or later mutilation of a notice upon specific copies by a newspaper during the publication of a "strip." Several courts have held that § 21 does not excuse the omission "of the prescribed notice" upon all subsequent copies, even though the notice on the first published copy was proper.[5] They have based this ruling on the word, "particular," in the phrase "particular copy or copies", and again we agree, since it is difficult otherwise to give any effect to that word. We shall not try to say in advance upon how many copies the notice may be omitted or defective, and yet the omissions or defects be deemed to be upon only "particular copies"; although some courts have said that such copies must be "very few," in spite of the fact that the section is remedial and should be generously construed. The question may not arise in the case at bar, and we will say no more at present than that, although the

4. United Thrift Plan v. National Thrift Plan, Inc., D.C., 34 F.2d 300; Weil on Copyright, § 907.

5. Krafft v. Cohen, 3 Cir., 117 F.2d 579; Deward & Rich v. Bristol Savings &

Loan Corp., supra, 4 Cir., 120 F.2d 537; Goes Lithographing Co. v. Apt. Lithographic Co., D.C., 14 F.Supp. 620; W. S. Bessett, Inc., v. Germain, D.C., 18 F. Supp. 249.

first newspaper to publish a "strip" affixes the "prescribed" notice on all copies then published, the failure to affix proper notices upon all copies of a later issue of the same "strip" by that, or another newspaper, is an "omission" upon more than "particular copies"; and § 21 may not be invoked.

■ Next is the question as to how far the notices must exactly conform to those which § 19 prescribes. It had been decided before § 21 was passed that, if the notice affixed carried an earlier date than the true one, the error did not "forfeit" the copyright, although the law required the notice to state the true year;[6] and that ruling has been followed later.[7] The rationale of these decisions, and their avowed justification, is that, since the purpose of the notice is to advise the public of the "proprietor's" claim, any notice will serve which does in fact advise it that there is a "proprietor" who does claim copyright, provided the notice does not affirmatively mislead. It is true that § 21 would not protect imperfect notices which appeared upon more than "particular copies"; nevertheless it would be absurd to construe it as limiting any latitude that the preceding law had allowed to a notice not strictly in accord with § 19. Therefore we hold that any notice is sufficient which gives the substance of what is prescribed in § 19. As applied to the alternative in § 19 of the letter "C," in place of "Copyright," there are indeed decisions to the contrary of this. The Eighth Circuit in Advertisers Exchange v. Anderson, 144 F.2d 907, and Judge Barksdale in Deward & Rich v. Bristol Savings & Loan Corp., D.C., 34 F.Supp. 345—affirmed without comment on this point in 120 F.2d 537—held that it "forfeited" a copyright to affix the letter "C" instead of the word "Copyright" if the "work" was not within subsections (f) to (k) of § 5. It is not altogether plain to us why such a notice should not have been held sufficient under the doctrine we have just mentioned; but the actual holding in these decisions need

not trouble us, for in the case at bar the "strips" were "pictorial illustrations," and within subsection (k) of § 5. The "proprietor" of such "works" has a choice between using the word "Copyright" and the letter "C," and either will serve.

■ Last is the question whether the copyrights on the "strips" appearing in Numbers 5 and 6 of the magazine, "Superman," were "forfeited" because the notice gave the corporation, Superman, Inc., as the name of the "proprietor," instead of "Detective," the "proprietor" in fact. Once more, § 21 did not excuse this, if the notice was insufficient, because an issue of "Superman" covered more than "particular copies." There is, however, no necessity to invoke that section, for we think that the notice was sufficient because of the relation of Superman, Inc., to "Detective." It was a corporation having the same officers, directors and shareholders as "Detective," and a subsidiary, fairly described as its "promotional agency." "Detective" had appointed it in January, 1940, as its "exclusive agent to exploit 'Superman' the trade-marks and copyrights and/or other rights therein, in any manner whatsoever," although it had confined the subsidiary to the exploitation of "Superman." It is true that the agreement did not authorize Superman, Inc., to take out copyrights; and we agree that, if Superman, Inc., had, like "McClure," been a corporation, having an independent will, and owned by shareholders who had interests separate from "Detective's," we should not be justified in holding that the mistake fell within the doctrine of the decisions we have mentioned. Since, however, the interests of the two corporations were precisely the same, we think that a notice was sufficient which used the dummy's name as "proprietor." Anyone who should act in reliance upon the proprietorship of Superman, Inc., would not find himself in any different position because it turned out that that corporation was only a dummy; certainly "Detective"

---

6. Callaghan v. Myers, 128 U.S. 617, 9 S. Ct. 177, 32 L.Ed. 547.

7. American Code Co. v. Bensinger, 2 Cir., 282 F. 829, 836; Shapiro, Bernstein & Co., Inc., v. Jerry Vogel Music Co., Inc., 2 Cir., 161 F.2d 406; Southern Music Publishing Co. v. Bibo-Lang, Inc., D.C., 10 F.Supp. 972.

could not for that reason have escaped any liability. We are unwilling to allow a bare-faced infringer to invoke an innocent deviation from the letter that could not in the slightest degree have prejudiced him or the public. Wildman v. New York Times Co., D.C., 42 F.Supp. 412, held that § 21 did not excuse mistakes of law; and, although for the reasons given the section did not apply as to these issues of "Superman," the same argument may be made to confute the latitude we are allowing to the notice. If so, we answer that although the doctrine does persist in some circumstances that a mistake of law will not excuse, it is a principle more honored in the breach than in the observance, and that we are unwilling to introduce it here. It is true that in our decision in Fleischer Studios, Inc., v. Ralph A. Freundlich, Inc., 2 Cir., 73 F.2d 276, the only mistake in the "proprietor's" name was the omission of the suffix, "Inc."; nevertheless, the reason for our disregarding that mistake was because it was trivial, and surely the measure of triviality is not whether on its face the mistake seems important, but whether it is in fact.

 The dismissal of "Detective's" claim for "misappropriation" and "unfair competition" was clearly right. There could be no misappropriation of any "strips," once published, if they were not copyrighted; as we said at the outset, they went at once into the public domain and anyone might copy them. International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211, is authority only for the situation there at bar, as has been over and over decided. The claim for unfair competition is equally baseless. In the first place "Fawcett's" magazines bore its name which had no resemblance to "Detective's," and there was no reasonable ground for supposing that readers would mistake one for the other. But the misapprehension goes much deeper. The owner's right to protect his name or mark from being copied depends primarily upon the likelihood that those who may wish to deal with him will be misled into dealing with the infringer; and that presupposes, not only that the mark has become associated with the owner as the source of the goods, but that this association is an inducement to deal with the owner. In the case of these silly pictures nobody cares who is the producer—least of all, children who are the chief readers—; the "strips" sell because they amuse and please, and they amuse and please because they are what they are, not because they come from "Detective." To allow the first producer of such pictures to prevent others from copying them, save as he can invoke the Copyright Law, would sanction a completely indefensible monopoly.

 There remains the claim of "Detective" against "Republic" and "Republic's" cross-claim against "Fawcett," both of which the judge necessarily dismissed after he found that "Detective" had "abandoned" all the copyrights in suit. He made no findings except to say that "Republic produced a serial motion picture photoplay, using the comic strips of 'Captain Marvel' which had appeared in 'Whiz Comics'"; and that this was "exhibited in many theatres in the United States." "Republic" in its brief appears to suppose that, because its "photoplay" differed from "Superman" in essential details of plot and in general pattern, it did not infringe. Nothing could be more mistaken; a plagiarist can never excuse his wrong by showing how much he did not plagiarize. In so far as "Republic" copied the details of those "strips" which "Fawcett" had copied from "Action Comics" or "Superman," it infringed; although "Detective" must of course point out the exploits which "Republic" did reproduce, and must prove that the reproduction was close enough in detail to satisfy the doctrine of Detective Comics, Inc., v. Bruns Publications, supra, 2 Cir., 111 F.2d 432. How far it must prove notice of "Detective's" copyrights in addition to the notice which "Fawcett" got, we need not say, except to refer to De Acosta v. Brown, 2 Cir., 146 F.2d 408. On the new trial the court will have to decide what valid copyrights "Republic" did infringe, and we shall have findings to guide us. On this record we cannot dispose of the claim. Nor will we pass upon the merits of the cross-claim of "Republic" against "Fawcett" upon its agreement to hold

"Republic" harmless for we have no findings.

Finally, we will not decide whether the district court had a dependent jurisdiction over the cross-claim under the doctrine of Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, now embodied in the Judiciary Code. That question the briefs did not argue; and indeed did no more than incidentally allude to; it must await development upon the new trial.

Judgment reversed; and cause remanded for further proceedings consistent with the foregoing opinion.