**PETER PAN FABRICS, INC. and Henry Glass & Co., Appellees,**

v.

**MARTIN WEINER CORP., Appellant.**

**No. 90, Docket 25716.**

United States Court of Appeals Second Circuit.

Argued Dec. 8, 1959.

Decided Jan. 27, 1960.

Friendly, Circuit Judge, dissented.

488

Samuel J. Silverman and Frederick E. N. Ballon, New York City, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Irving Younger, Forest Hills, N. Y., of counsel, for appellant.

Bernard A. Helfat, Helfat & Helfat, New York City, J. Nathan Helfat, New York City, of counsel, for appellees.

Before LUMBARD, Chief Judge, and HAND and FRIENDLY, Circuit Judges.

HAND, Circuit Judge.

This is an appeal from a preliminary injunction, granted by Judge Herlands, forbidding the defendant to copy an ornamental design, printed upon cloth. The plaintiffs—which for the purposes of this appeal are to be regarded as one —and the defendant are both "converters" of textiles, used in the manufacture of women's dresses. A "converter" buys uncolored cloth upon which he prints ornamental designs, and which he then sells to dressmakers. The plaintiffs bought from a Parisian designer a design, known as "Byzantium," which it registered as a "reproduction of a work of art," (§ 5(h) of Title 17 U.S. Code) and for which the Copyright Office issued Certificate No. H.7290. This design they print upon uncolored cloth, sold in bolts to dressmakers. The cloth, so "converted," bears upon its edge at each repetition of the design printed "notices" of copyright which are concededly adequate under the Copyright Law. The buyers of the bolts cut the cloth into suitable lengths and use it to make women's dresses; but in doing so, they either altogether cut off the selvage which bears the notices, or else they sew the adjacent edges of the cloth together at the seams in such a way that the notices are not visible unless the seams are pried, or

cut, apart, or unless the dress is turned inside out. The appeal raises two questions: (1) whether the defendant has in fact copied so much of the registered design as to infringe the copyright; and (2) whether the design was dedicated to the public, because it was sold without adequate notice of copyright as required by § 10 of the statute.

■ The test for infringement of a copyright is of necessity vague. In the case of verbal "works" it is well settled that although the "proprietor's" monopoly extends beyond an exact reproduction of the words, there can be no copyright in the "ideas" disclosed but only in their "expression." Obviously, no principle can be stated as to when an imitator has gone beyond copying the "idea," and has borrowed its "expression." Decisions must therefore inevitably be *ad hoc*. In the case of designs, which are addressed to the aesthetic sensibilities of an observer, the test is, if possible, even more intangible. No one disputes that the copyright extends beyond a photographic reproduction of the design, but one cannot say how far an imitator must depart from an undeviating reproduction to escape infringement. In deciding that question one should consider the uses for which the design is intended, especially the scrutiny that observers will give to it as used. In the case at bar we must try to estimate how far its overall appearance will determine its aesthetic appeal when the cloth is made into a garment. Both designs have the same general color, and the arches, scrolls, rows of symbols, etc. on one resemble those on the other though they are not identical. Moreover, the patterns in which these figures are distributed to make up the design as a whole are not identical. However, the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same. That is enough; and indeed, it is all that can be said, unless protection against infringement is to be denied because of

variants irrelevant to the purpose for which the design is intended.

■■ The second question is whether the plaintiffs have forfeited their copyright. As we have said, there is no question that the bolts of cloth were adequately marked to comply with § 10, for a notice was "affixed to each copy * * offered for sale"; and, it appeared at intervals along the selvage, so that no one using the cloth could avoid seeing it. However, although the notices served the purpose of advising those who bought, or dealt with, the bolts, they did not give adequate notice to those who bought, or wore, dresses made of the cloth, for, when not altogether cut off, they were so placed as to be most unlikely to be detected. Section 21 of the act provides that the "omission by accident or mistake of the prescribed notice from a particular copy or copies shall not invalidate the copyright"; but the effective suppression of this mark on dresses is neither accidental nor mistaken; and sales with a deliberate omission of notice will forfeit the copyright (National Comic Publications, Inc. v. Fawcett Publications, Inc., 2 Cir., 191 F.2d 594; Id., 2 Cir., 198 F.2d 927. Therefore, if we construe the words of § 10 with relentless literalism, dresses made out of the "converted" cloth may be said to be "offered for sale" without any effective notice. In support of such an interpretation it may be argued that the doctrine, *expressio unius, exclusio alterius*, would apply: that is to say, since Congress made only "omission by accident or mistake" an excuse we must not enlarge the exemption.

■ On the other hand, it is a commonplace that a literal interpretation of the words of a statute is not always a safe guide to its meaning. Indeed, in extreme situations this doctrine has been carried so far that language inescapably covering the occasion has been disregarded when it defeats the manifest purpose of the statute as a whole. Holy Trinity Church v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226; Markham v. Cabell, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165; Cawley v. United States, 2

Cir., 1959, 272 F.2d 443. We need not go so far in the case at bar. In the first place it is hard to see how "notice" can said to be "affixed" to a "design" when it is incorporated into it; the copyrighted "work" will itself be changed, even though the change be so immaterial as not to impair the aesthetic appeal of the "design." Be that as it may, we do not hold that in no circumstances will it be possible to "affix notice" upon a "design" which will be still visible when the cloth has been made up into a garment. We do hold that at least in the case of a deliberate copyist, as in the case at bar, the absence of "notice" is a defence that the copyist must prove, and that the burden is on him to show that "notice" could have been embodied in the design without impairing its market value. The defendant asserts that this can be done but it has offered no evidence that it can be. Whatever may be shown at the trial, upon this record we hold that the "design" should be protected, *pendente lite.*

Order affirmed.

FRIENDLY, Circuit Judge (dissenting).

I regret that I cannot join in the judgment of the Court. I would reverse.

Section 10 of the Copyright Act, 17 U.S.C. § 10, provides that "Any person entitled thereto by this title may secure copyright for his work by publication thereof with the notice of copyright required by this title; and such notice shall be affixed to each copy thereof published or offered for sale in the United States by authority of the copyright proprietor." The question is whether plaintiffs met the second requirement.

Admittedly, the notice of copyright is not "affixed to each copy" of the copyrighted design on the dresses manufactured and sold by the purchasers that bought cloth from plaintiffs. Indeed, whether the notice remains affixed to any copy is fortuitous, since, as was conceded at the bar, plaintiffs cannot practically obtain any commitments from the manufacturers in this regard. I do not read

the Court's opinion as questioning that the manufacturers make and sell the dresses in this manner "by authority of the copyright proprietor." Such sales were the very purpose of the purchases of the cloth; plaintiffs knew that the notices would generally be cut off; and I read § 10 as using "authority" in the broad sense of permission and not as requiring any technical agency relationship. It is unnecessary to debate whether the conversion of the designs into dresses was a republication; for it was an offer for sale unless we deny those words the sense they have in everyday speech. I take it no one would question that an authorized offer for sale occurred if the purchasers, with plaintiffs' acquiescence, regularly cut off the selvage bearing the copyright notice and sold the cloth in strips; I think there was no less such an offer when the purchasers cut off the selvage and sold the cloth in dresses.

I am not altogether clear whether my brothers say that the sale of the dresses was not an offer for sale with the authority of the copyright proprietor or that it was such an offer but that notice need not be affixed if this was not feasible. The latter construction seems borne out by the suggestion that plaintiffs will be denied a final decree if defendant proves that notice could have been affixed to each copy of the design in the dresses without impairing the market value; for, unless the sale of the dresses is within § 10, plaintiffs are under no requirement to have the notice affixed. In any event the result is plain enough. Plaintiffs receive copyright protection for enabling a multitude of ladies to be caparisoned in the purple of "Byzantium" although the copyright notices, instead of being "affixed to each copy" of the design on the dresses, pile up in the cutting rooms. It is of no moment that the Court now grants protection only *pendente lite.* For the record makes it evident that designs such as plaintiffs' are anything but Byzantine in longevity —indeed, the moving affidavit gives this one but a few months of life—and in

litigation of this sort the preliminary rather than the final injunction is the thing.

I could reconcile the majority's result with the language of § 10 if, but only if, there were clear evidence that the dominant intention of Congress was to afford the widest possible copyright protection whereas the notice requirement was deemed formal or at least secondary. I find nothing to support such a stratified reading of § 10. The notice requirement goes back to almost the earliest days of copyright under the constitutional grant, Act of April 29, 1802, ch. 36, 2 Stat. 171; its essentiality has been emphasized by the highest authority, Mifflin v. R. H. White & Co., 1903, 190 U.S. 260, 23 S.Ct. 769, 47 L.Ed. 1040, Mifflin v. Dutton, 1903, 190 U.S. 265, 23 S.Ct. 771, 47 L.Ed. 1043; Louis Dejonge & Co. v. Breuker & Kessler Co., 1914, 235 U.S. 33, 37, 35 S.Ct. 6, 59 L.Ed. 113 and when Congress has wished to make an exception, it has known how to do so, see 17 U.S.C. § 21. The notice requirement serves an important public purpose; the copyright proprietor is protected so long and only so long as he gives effective warning to trespassers that they are entering on forbidden ground. Mifflin v. R. H. White & Co., supra, 190 U.S. at page 264, 23 S.Ct. at page 771; Shapiro, Bernstein & Co. v. Jerry Vogel Music Co., 2 Cir., 161 F.2d 406, 409, certiorari denied, 1947, 331 U.S. 820, 67 S.Ct. 1310, 91 L.Ed. 1837. And if the statutory requirement of notice has not been met, it is immaterial whether a particular defendant had actual knowledge of a claim of copyright or not. Metro Associated Services v. Webster City Graphic, D.C.D. Iowa 1953, 117 F.Supp. 224, 234.

I realize that the view I hold may seriously impair the use of copyright to prevent piracy in an area where this has been recognized to be rampant for thirty years, Cheney Bros. v. Doris Silk Corp., 2 Cir., 1929, 35 F.2d 279, certiorari denied, 1930, 281 U.S. 728, 50 S.Ct. 245, 74 L.Ed. 1145, and probably for much longer, since it may not be practicable to affix the notice to an inside seam on every repetition of the design. It can be argued also that this is to insist on a useless formality since, though there is reason for requiring notice on each copy of a book, one notice on a dress is as good as ten. But, as was held by the Supreme Court in Dejonge, it is not for the courts to say that something less than the statutory requirement will serve. Congress has not accompanied the broadening of the subjects of copyright in § 5 with a relaxation of the notice requirement of § 10, except as it has simplified the form of notice for certain subjects in § 19 and has saved against accidental omission in § 21. Nothing gives me warrant for belief that Congress would be content with the proprietor's simply affixing the copyright notice to each copy as it leaves him, when, as here, he knows that almost every notice will be removed before the copyrighted reproductions reach their intended market. As said in Louis Dejonge & Co. v. Breuker & Kessler, supra, 235 U.S. at page 37, 35 S.Ct. at page 6, "The appellant is claiming the same rights as if this were one of the masterpieces of the world, and he must take them with the same limitations that would apply to a portrait, a holy family, or a scene of war." To be sure, the precise defect held fatal in Dejonge is not present here since the notice was on "each copy" as it left plaintiffs, but Mr. Justice Holmes' admonition remains pertinent. So also, while I do not contend decision to be controlled by National Comics Publications, Inc. v. Fawcett Publications, Inc., 2 Cir., 1951, 191 F.2d 594, 600, 601, opinion clarified, 198 F.2d 927, Deward & Rich, Inc. v. Bristol Savings & Loan Corp., 4 Cir., 1941, 120 F.2d 537, and Advertisers Exchange, Inc. v. Anderson, 8 Cir., 1944, 144 F.2d 907, these cases are at least closer than those relied on by the District Court in holding for plaintiffs. Perhaps my brothers are right in thinking that Congress wished literal compliance with § 10 to be excused under such circumstances as here; but the voice so audible to them is silent to me.