MANSFIELD, Circuit Judge
(dissenting):
I respectfully dissent for reasons that are well stated by Judge Leval in his opinion and order dated February 25, 1981, dissolving the injunction issued by the Bankruptcy Court, Galgay, J., barring New York City officials from seeking to revoke a certificate of occupancy that had permitted the establishment of a nursing home on the debtor’s property. In my view the Bankruptcy Court lacks jurisdiction to interfere with the state’s enforcement of its regulatory powers. See Smith v. New York State Liquor Authority, Inc. (In re Bay Ridge Inn, Inc.), 94 F.2d 555 (2d Cir. 1938); NLRB v. Jonas (In re Bel Air Chateau Hospital, Inc.), 611 F.2d 1248 (9th Cir. 1979); Colonial Tavern, Inc. v. Byrne (In re Colonial Tavern, Inc.), 420 F.Supp. 44 (D.Mass.1976). Absent some claim of denial of the debtor’s constitutional rights — and none is asserted here — those state police powers rest within the exclusive jurisdiction of the state’s administrative apparatus, with the debtor having the same right as any other citizen to obtain state judicial review. A federal bankruptcy court is not a super-City Plan *45 ning Commission or Board of Standards and Appeals.
Nothing in the Bankruptcy Act confers upon the Bankruptcy Court, a statutory tribunal of limited jurisdiction, any of the powers which the majority would permit it to exercise here. Strong federal-state comity considerations militate against federal intervention into state zoning matters that are not attacked on constitutional grounds. No showing is made that state remedies are inadequate. With due respect for the able bankruptcy judge’s expertise in bankruptcy matters, he would not ordinarily possess the qualifications of the appropriate state bodies to determine whether the City’s zoning regulations would be violated, whether the nursing home here would “fulfill an unm,et need in the community,” and whether any benefit a nursing home would confer is outweighed by other considerations, such as excessive burdens on the community, traffic congestion, lack of adequate parking space or roads, inadequate off-street loading facilities, or the like. These are matters that the appropriate city administrative facility and state court are in a much better position to evaluate than a bankruptcy judge.
Aside from its lack of expertise and qualifications to determine the reach of local zoning regulations, the Bankruptcy Court should not for another reason be empowered to enjoin the state’s exercise of its regulatory powers. There is a fundamental conflict between a bankruptcy court’s interest or motivation and that of the appropriate state tribunals. The Bankruptcy Court, naturally enough, is solely interested in enhancing the value of the debtor’s estate for the benefit of creditors whereas the objective of state zoning bodies is to enforce regulatory powers (whether they relate to clean air, traffic, housing, size of residence units, or type of land use) for the benefit of the community at large. Lastly, we should note that if the Bankruptcy Court can prevent a state regulatory agency from taking action that might lessen the value of the estate, nothing would prevent it from enjoining the state from invoking other state laws that might affect the bankrupt, such as those calling for revocation of a license for cause or lapse, prohibiting the erection of advertising signs, prescribing fire control or safety regulations, authorizing criminal proceedings, or the like.
The majority, as a jurisdictional basis for the Bankruptcy Court’s action here, relies on the automatic stay provisions of Bankruptcy Rule 12-43. However, as Congress made clear in its later more detailed codification of the law in the new Bankruptcy Code, Rule 12 — 43 was never intended to permit a Bankruptcy Court to interfere with a governmental unit’s enforcement of its police or regulatory power, see Bankruptcy Code, § 362(b)(4), 11 U.S.C. § 362(b)(4). Moreover, as Learned Hand has wisely warned, “it is a commonplace that a literal interpretation of the words of a statute is not always a safe guide to its meaning,” Peter Pan Fabrics Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960). Equally appropriate for present purposes are his remarks in Guiseppi v. Walling, 144 F.2d 608, 624 (2d Cir. 1944) (concurring opinion), where he stated:
“It does not therefore seem to me an undue liberty to give the section as a whole the meaning it must have had, in spite of the clause with which it begins. . . . There is no surer way to misread any document than to read it literally; in every interpretation we must pass between Scylla and Charybdis; and I certainly do not wish to add to the barrels of ink that have been spent in logging the route. As nearly as we can, we must put ourselves in the place of those who uttered the words, and try to divine how they would have dealt with the unforeseen situation; and, although their words are by far the most decisive evidence of what they would have done, they are by no means final.”
See also Federal Deposit Insurance Corp. v. Tremaine, 133 F.2d 827, 830 (2d Cir. 1943) (L. Hand, C.J.) (“There is no surer guide in the interpretation of a statute than its purpose when that is sufficiently disclosed; nor any surer mark of over solicitude for the letter than to wince at carrying out that purpose because the words used do not for *46 mally quite match with it”). The purpose of Rule 12-43 was to supplement and reinforce the Bankruptcy Court’s exclusive jurisdiction over property in its possession in order to avoid creation or enforcement of liens by third parties. It is questionable whether a Certificate of Occupancy may be classified as “property,”[1] but even if it were, it automatically ceased to exist as such as a matter of law in the present case when it lapsed under New York City Zoning Resolution, § 52-61,[2] by reason of the permittee’s admitted non-exercise of the certificate for a continuous period of two years prior to 1976.
The majority, apparently recognizing that the automatic stay provisions of the Act may have no application, nevertheless asserts that the Bankruptcy Court has power to enjoin the “bad faith” enforcement of local state regulations.[3] I disagree. Such an exception would result in Bankruptcy Court mini-trials of purely state regulatory issues whenever, as might be expected to happen frequently, the debtor sought by claiming “bad faith” to have those issues tried in a Bankruptcy Court, which would be sympathetic toward any resolution that would improve the estate, rather than before state tribunals. The proper remedy is to seek redress in the state courts, which may be expected not to tolerate bad faith conduct on the part of any regulatory officials.
Nor does the record in the present case support a claim that the Borough Superintendent of Buildings acted in bad faith. Although a Certificate of Occupancy was issued to the debtor on June 11, 1973, the property remained vacant for many years and was not operated as a nursing home until 1980. In the meantime, on January 10, 1974, the City’s Board of Estimate amended Zoning Resolution § 74-90 to prohibit the use of property as nursing homes except by special permit granted by the City Planning Commission upon its making certain findings as to landscaping, topography, supporting neighborhood services, traffic and benefits to the community. Since the debtor’s property had not, prior to January 10, 1974, ever been used as a nursing home, this use could not thereafter be permitted as a matter of right and must be treated as a “non-conforming” use, Zoning Res. § 12-10, for which a special permit would be required under Zoning Res. § 74-90. Moreover, under Zoning Res. § 52-61 *47 the right to use the property for a nursing home evidenced by the Certificate of Occupancy automatically lapsed and ceased to exist by reason of the non-use of the property as a nursing home for a continuous period of two years after the issuance of the Certificate. All of these regulations are laws of general application which were not directed toward the debtor. The proposed revocation of the debtor’s Certificate of Occupancy therefore amounts merely to a ministerial act mandated by the law. When his attention was brought to the existence of this non-conforming use, the Borough Superintendent of Buildings instituted the revocation proceeding now pending before the Board of Standards and Appeals.
In view of this undisputed history I find nothing in the record to suggest bad faith on the part of the Borough Superintendent of Buildings. Nor did Judge Galgay find bad faith, as the majority states; he found that the action was “not within the valid exercise of its police power under the zoning laws” because of the Borough Superintendent’s delay in bringing the revocation proceeding. To this appellant suggests bad faith based on the fact that the Superintendent was instigated to act by community complaints. In my view, to suggest that this indicates “bad faith” borders on the absurd. The delay in the City Department’s institution of a ministerial action, when there was no existing violation of law because the debtor was not using the property as a nursing home and might never do so (in view of the continued refusal of the Public Health Council of the State of New York to grant a nursing home license), is so insignificant that it provides no basis for any inference as to later motive or intent. The Department of Buildings cannot be expected to be aware of all instances where such action is required. The fact that the lapse of the Certificate of Occupancy was brought to the Borough Superintendent’s attention by a community group opposed to the nursing home use and hence having an axe to grind does not taint the Borough Superintendent’s motive or action. This is probably the most common manner in which threatened violations of law are brought to the attention of most law enforcement authorities, state or federal.
Finally, the best evidence that the Borough Superintendent, once the matter was brought to his attention, was merely doing his job, without fear or favor, lies in his advice to appellant Trustee that if the latter pursued the proper legal course by seeking a special permit for nursing home use from the City Planning Commission the Department of Buildings would not oppose the application. Indeed, since the City was under no obligation to remain neutral in the matter, this was evidence of the Borough Superintendent’s good faith in enforcing the law. There is not one whit of evidence that in bringing the revocation proceeding he was discriminating against appellant by permitting other similarly-situated holders of lapsed Certificates of Occupancy nevertheless to operate without such certificates.
For the foregoing reasons I would affirm the judgment of the district court.

. Even if a Certificate of Occupancy is treated as a property right, it is expressly conditioned upon the power of the Board of Standards to vacate or modify it. Section 645(e) of the New York City Charter provides:
“every certificate of occupancy shall, unless and until set aside, vacated or modified by the board of standards and appeals or a court of competent jurisdiction, be and remain binding and conclusive upon all agencies and officers of the city, and shall be binding and conclusive upon the department of labor of the state of New York, as to all matters therein set forth, and no order, direction or requirement affecting or at variance with any matter set forth in any certificate of occupancy shall be made or issued by any agency or officer of the city, or by the department of labor of the state of New York, or any commission, board, officer or member thereof, unless and until the certificate is set aside, vacated or modified by the board of standards and appeals or a court of competent jurisdiction upon the application of the agency, department, commission, officer or member thereof seeking to make or issue such order, direction or requirement. . . . ” (Emphasis supplied).

. New York City Zoning Resolution, § 52-61, provides in pertinent part:
“If, for a continuous period of two years, either the non-conforming use of land with minor improvements is discontinued, or the active operation of substantially all the nonconforming uses in any building or other structure is discontinued, such land or building or other structure shall thereafter be used only for a conforming use. Intent to resume active operations shall not affect the foregoing.”

. Appellant concedes that the Bankruptcy Court lacks jurisdiction to prevent good faith enforcement of state zoning regulations and contends that the issue is whether it has jurisdiction to enjoin bad faith enforcement, stating:
“This Court is not, as the City suggests, faced with deciding whether a bankruptcy court is vested with power to prevent good faith enforcement of zoning regulations in order to protect health, safety and welfare. It is beyond peradventure that the bankruptcy court cannot and should not do so. Here the issue is the City’s lack of good faith.” (Appellant’s Reply Br. at 1; emphasis in original)